**Israel T. ROBLES, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 285S42.

Supreme Court of Indiana.

July 28, 1987.

Dennis E. Zahn, James H. Voyles, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

This case presents novel Fourth Amendment questions concerning a modern phenomenon: the transportation of illegal drugs in airline baggage. Appellant Israel T. Robles was convicted after a bench trial of dealing in cocaine, a Class A felony, Ind. Code § 35-48-4-1 (Burns 1985 Repl.). He was sentenced to thirty years in prison.

In this direct appeal, Robles challenges the admission of two packages of cocaine seized from luggage which he was carrying immediately before his arrest. The evidence showed that he approached the Britt Airways counter at the Indianapolis International Airport about 3:15 p.m. on December 31, 1983. He was carrying a small, light suitcase and seeking to pick up a prepaid ticket for a flight to Chicago, departing at 4 p.m. Robles produced some type of Puerto Rican identification which did not display a photograph. When the Britt agent requested identification displaying a photograph, Robles produced his Florida driver's license listing a Miami address.

Robles asked the Britt agent to check his luggage, although the bag was small enough to carry on board. Testimony showed that carry-on luggage would have passed through an x-ray machine, while checked luggage would not. The luggage was sent to the baggage room, and Robles left the Britt counter.

The Britt agent suspected that Robles might be carrying narcotics because of (1) his Puerto Rican and Florida identification; (2) his checking of the lightweight luggage, and (3) the fact that he had a prepaid one-way ticket to a city so far from his home yet carried only a small bag. The agent conveyed her suspicions to other Britt employees, and one of them brought Robles' bag to the Britt operations office. Britt Operations Manager Kevin Macy opened Robles' bag and found two packages wrapped in duct tape. One package was about the size of a baseball and the other was as large as a football. Macy could not ascertain their contents, so he called the Airport police with a report of "suspicious packages."

Officer Gerald Clinger arrived at the Britt office about 3:40 p.m. Macy showed him the open suitcase with the two packages sitting on top of clothing. Clinger asked what they had. Macy said the ticket agent was suspicious of the man who checked the bag. Clinger picked up the packages and examined them. He later testified he believed a felony might be in progress; he had seen pictures of such packages in law enforcement magazines and in police academy classes and knew that they were commonly used to transport drugs. In response to Clinger's questions, the Britt employees said they did not know where Robles was at the moment, but his flight was scheduled to depart at 4 p.m.

Clinger peeled the tape off the smaller bundle and discovered aluminum foil stuck to the tape. He could see a plastic bag with a white powdery substance under the foil. He conducted a narcotics field test on the white powder and obtained a positive reaction for cocaine. Then he called two other officers, who arrived momentarily. The package was rewrapped and returned to the suitcase. After obtaining a description of Robles, the officers took the luggage and located him at the gate. Robles

agreed to accompany police to answer questions concerning the luggage.

After being read his *Miranda* warnings, Robles twice denied that the bag was his. Clinger asked to see Robles' ticket, which matched the tag on the bag. Robles then admitted that he had been carrying the bag but asserted that it belonged to a friend named "Juan" who asked him to carry it to Chicago. Robles said he did not know Juan's last name. Robles was arrested.

■■■ Robles first claims that the cocaine was the product of an illegal search and thus was inadmissible at trial. The State contends that Robles does not have standing to raise this issue. The Fourth Amendment protects from unreasonable searches those areas in which a defendant has an actual or subjective expectation of privacy which society recognizes as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220, 226 (1979) (*citing Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 588 (1967) (Harlan, J., concurring)). An individual possesses a privacy interest, cognizable under the Fourth Amendment, in the contents of his personal luggage. *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). However, mere possession of a searched item does not confer automatic standing to challenge the search on Fourth Amendment grounds, albeit that possession, as in this case, is sufficient to establish criminal culpability. *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

Citing *United States v. Tolbert,* 692 F.2d 1041 (6th Cir.1982), the State argues that a defendant who disclaims ownership in luggage does not possess a reasonable expectation of privacy in the bag at the time of the search. In *Tolbert,* the defendant completely denied ownership of a piece of luggage, and her disclaimer occurred immediately *before* the search of the luggage by government agents. The Sixth Circuit reasoned that Tolbert had no reasonable expectation of privacy in the luggage because she "affirmatively indicated that she had no interest in preserving the secrecy of the contents...." 692 F.2d at 1045. *See also, State v. Machlach* (1987), Ind.App., 505 N.E.2d 873 (defendant who disclaims ownership of suitcase before search has no legitimate expectation of privacy in it).

Robles' case differs in important ways. He was not approached by police and questioned about the luggage until *after* the search. At the time of the search, Clinger had every reason to believe that he was intruding into Robles' privacy interests. He knew Robles had checked the luggage with Britt. How could he have known at that time that Robles later would disclaim ownership?

■■ Moreover, unlike the defendant in *Tolbert,* Robles admitted he was transporting the bag, although he attributed ownership to the elusive "Juan." While this Court has on occasion denied Fourth Amendment standing to defendants challenging the search of a third person's premises or property, those rulings were grounded on the determination that the defendant did not have a reasonable expectation of privacy within the area to be searched. *See, e.g., Stout v. State* (1985), Ind., 479 N.E.2d 563; *Wolfe v. State* (1981), Ind., 426 N.E.2d 647. Thus, ownership of the searched property does not by itself define who falls under the protective umbrella of the Fourth Amendment.

■■ In *United States v. Posey,* 663 F.2d 37 (7th Cir.1981), a defendant driving an automobile owned by his wife was found to have Fourth Amendment standing to challenge a search of that automobile. *See also, Pollard v. State* (1979), 270 Ind. 599, 388 N.E.2d 496. Robles asserted a possessory interest similar to that of Posey and Pollard—a bailment. Under these circumstances, in light of the recognized privacy interest in luggage, we conclude Robles had a reasonable expectation of privacy in the bag and its contents sufficient to allow him to challenge the reasonableness of the search on Fourth Amendment grounds.

■■■ The Fourth Amendment proscribes only unreasonable search and seizure by government or its agents; it is wholly inapplicable to a search or seizure

conducted by a private individual who is neither an agent of the government nor acting with the participation or knowledge of any governmental official. That employees of a private carrier independently opened the luggage and made an examination that might have been impermissible for a government agent does not render the subsequent official conduct unreasonable *per se*. The reasonableness of the official invasion must be appraised by the extent to which it exceeds the unofficial invasion. *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

The Tenth Circuit Court of Appeals has found that a government officer who removes powder from rubber tubes which airline employees have taken out of a package placed for shipment may do so to determine if the substance in plain view is contraband. This plain view inspection, the Tenth Circuit said, falls within the bounds of the private search by airline employees. *United States v. Ford*, 525 F.2d 1308 (10th Cir.1975). In light of the more recent *Jacobsen* decision, we disagree.[1] In this case, it seems more likely that the officer's unwrapping of the package and subsequent field test were searches within the meaning of the Fourth Amendment. State does not contend otherwise.

Warrantless searches of sealed packages are presumptively unreasonable under the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85. However, the validity of a warrantless search and seizure turns upon the facts and circumstances of each case. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Guardiola v. State* (1978), 268 Ind. 404, 375 N.E.2d 1105. When the defendant challenges a warrantless search, the State has the burden of showing that the search fell within one of the exceptions to the warrant requirements. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Murphy v. State* (1986), Ind.,

499 N.E.2d 1077. One such exception exists when police have probable cause to believe the search will produce evidence that a crime has been committed and are faced with exigent circumstances which render the procurement of a warrant impractical. *Zimmerman v. State* (1984), Ind.App., 469 N.E.2d 11.

Probable cause exists where the facts and circumstances within the knowledge of the officer making the search, based on reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Clinger knew that the luggage had been carried by a person who had raised the suspicions of a Britt agent. He also recognized the unique packages as those commonly used to transport drugs. Like the heroin-filled balloon in *Texas v. Brown*, "the distinctive character (of the container) spoke volumes as to its contents—particularly to the trained eye of the officer." 460 U.S. 730, 743, 103 S.Ct. 1535, 1544, 75 L.Ed.2d 502, 514 (1983). Under these circumstances, Clinger had probable cause to believe the packages contained drugs.

The existence of probable cause, of course, does not relieve police from the warrant requirement. "Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package." *United States v. Jacobsen*, 466 U.S. at 114, 104 S.Ct. at 1656.

Exigent circumstances may justify a warrantless search where there is probable cause. However, that exception is not "a *per se* rule to be applied indiscriminately to ... every object that has the capacity for movement. Rather, its application should depend upon an evaluation of at-

---

1. It is important to note that a white powder was visible in the suspicious containers in *United States v. Ford*, as in *Jacobsen*, although the Court in *Ford* did not focus on that fact in rendering its opinion.

tendant circumstances." *United States v. Valen,* 479 F.2d 467, 470 (3rd Cir.1973).

The detection of contraband by airline employees shortly before the owner's flight departure has been found to constitute exigent circumstances justifying a warrantless search of the suspicious package. *United States v. Berger,* 355 F.Supp. 919 (W.D.N.Y.1973). Compare *United States v. Soriano,* 482 F.2d 469 (5th Cir.1973) (suitcases of defendants arrested on drug charges may be seized but not searched without a warrant). Exigent circumstances also have been found when a bag containing the suspected contraband is scheduled for momentary departure. *United States v. Ogden,* 485 F.2d 536 (9th Cir. 1973).

■ Exigent circumstances in this case also justified a warrantless search. Clinger opened the packages and conducted the field test about 3:40 p.m. on New Years Eve, a Saturday. It was unlikely that he would have been able to obtain a warrant before the end of that holiday evening and impossible to do so before Robles' plane departed for an out-of-state destination at 4 p.m. If the officer had confiscated the packages until a warrant was obtained, Robles probably would have evaded the police by traveling to another jurisdiction. The Court of Appeals has found exigent circumstances justifying a warrantless arrest when the suspect is traveling in a moving vehicle which may quickly and easily transport him from the jurisdiction. *Payne v. State* (1976), 168 Ind.App. 394, 343 N.E.2d 325. Although it is the search and not the arrest which is at issue in this case, a finding of exigent circumstances also is merited here. Under these circumstances, the officer's warrantless search of the packages was not unreasonable within the meaning of the Fourth Amendment.

Robles also claims that the packages of cocaine were improperly admitted because the State did not establish a proper chain of custody. The evidence showed that Clinger placed the two packages wrapped in duct tape in a sealed plastic bag and took the bag to the Indianapolis Police Department laboratory, where he gave it to an IPD chemist. The chemist logged in the exhibit and placed it in a safe. She later removed the exhibit for testing. She testified at trial that when she did so both packages had tape on them, but she was not certain that one was wrapped with duct tape.

■ The State's burden in an attack on the validity of a chain of custody is to show the continuous whereabouts of the evidence. The mere potential for tampering does not make the evidence inadmissible, and the State is not required to exclude every possibility of tampering. However, when the evidence is fungible, as in the case of drugs, the importance of a proper chain of custody is enhanced. The proper showing of a chain of custody must give reasonable assurance that the property passed through the hands of the parties in an undisturbed condition. *Gorman v. State* (1984), Ind., 463 N.E.2d 254.

■ The State established a sufficient chain of custody by demonstrating the continuous whereabouts of the packages of cocaine. The chemist's failed memory created at best the mere possibility of tampering and thus did not make the packages inadmissible. Furthermore, Clinger identified the packages at trial and noted that they were in substantially the same condition, aside from some changes made by the chemist during her tests. We find no error in the admission of the drugs.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.