James W. DANIEL, Appellant
(Defendant below)

v.

STATE of Indiana, Appellee
(Plaintiff below)

No. 49S00–8702–CR–159.

Supreme Court of Indiana.

June 29, 1988.

Nancy L. Broyles, McClure, McClure & Kammen, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant James W. Daniel was found guilty following a jury trial in the Marion County Superior Court, of robbery and resisting law enforcement. On September 5, 1986, the trial court sentenced him to a term of fifteen (15) years for the robbery conviction, and one (1) year on the conviction for resisting law enforcement, said terms to be served concurrently.

Daniel's issues for review are consolidated as follows:

1. admission of items of evidence;

2. improper flight instruction given by the trial court in final instructions; and

3. improper entry of judgment of conviction.

The facts show that on December 25, 1985, at approximately 1:00 a.m., a black man wearing a grey jacket, blue jeans, and

a fisherman's hat, entered the Clark Service Station at 1440 Prospect Street, Indianapolis. The man bumped up against the cashier, Clyde Baker, held a knife with black tape on the handle against Baker's throat and demanded money. After taking money from the cash register drawer, the man walked out of the store and Baker immediately phoned his description to the police. Police Officer Donald Bender was approximately six blocks away from the Clark Station when he heard the broadcast of the armed robbery and headed west on Prospect Street. As he stopped for a red light at the intersection of Prospect and State Streets, a blue Chevrolet and a red Pontiac heading east on Prospect were also stopped at the light. When the light changed, the Chevrolet turned north on State and the Pontiac turned south. Bender decided to turn south and pulled in behind the Pontiac, which then accelerated away from him. When Bender caught up with the Pontiac, he turned on his red lights and siren, and broadcasted that he was in pursuit. Several other police officers joined the chase and they eventually stopped the Pontiac in the Garfield Park area, approximately twenty-two blocks away.

Officer James Lopossa was in the Garfield Park area when he heard Bender's broadcast and joined the pursuit at the intersection of Raymond and East Streets. Both LaPossa and Bender saw the driver of the Pontiac throw money out of his car window during the chase and before he was stopped. When the driver stepped out of his car, Lapossa leveled his gun at him and ordered him to "freeze." Either Lapossa or Bender had a short struggle with the driver before Bender handcuffed him and advised him of his rights.

A search of the car and surrounding area revealed a fisherman's hat and a knife with black tape on the handle. Detective John Webster questioned victim Baker at the Clark Station and then drove him to the site of Daniel's apprehension. The police placed the fisherman's hat on Daniel's head

and Baker positively identified Daniel as the person who had robbed him approximately fifteen minutes before. He also identified the knife and hat in court as similar to those Daniel had used during the robbery. Both Bender and Lapossa identified Daniel in court as the driver of the Pontiac. Bender also identified the knife and hat in court as those he recovered during the search.

I

■ Officer Bender took the knife and hat from the apprehension site to the police property room, placed them and an evidence card in a heat sealed plastic bag and stored them in the property room. On the day of trial, Detective Webster removed the items from the property room, took them out of the plastic bag, and brought them to court. The court admitted both items as Exhibits No. 4 and No. 5 into evidence, over Daniel's objections.

Daniel's only objection to Exhibits No. 4 and No. 5 was that the State failed to establish a sufficient chain of custody. The State presented the testimony of three persons who identified the hat and knife as items connected with Daniel and the robbery. Clyde Baker, the victim, testified Exhibit No. 4 looked like the hat worn by the robber and Exhibit No. 5 looked like the knife the robber held against his throat. The only change he saw was that tape had been put over the blade of the knife to protect anyone handling it. Officer Bender and Detective Webster identified the hat as the one they removed from Daniel's car and the knife as the one they saw on the street near Daniel's car.

■ It is well-settled the State need not establish a chain of custody for items of hard physical evidence which are not fungible in nature. *Heald v. State* (1986), Ind., 492 N.E.2d 671, 681; *Davis v. State* (1985), Ind., 472 N.E.2d 922, 924. The court may admit such items into evidence based on testimony that the item is the one in question and is in a substantially un-

changed condition. *Davis*, 472 N.E.2d at 924. The trial judge has discretion in admitting exhibits such as these and need not require absolute and positive identification in order to establish an adequate foundation for the admission of such items of evidence. A witness must at least state the item is "like" the one associated with the crime and there must also be a showing the item is connected with the crime. *Hudson v. State* (1986), Ind., 496 N.E.2d 1286, 1295; *Sons v. State* (1987), Ind., 502 N.E.2d 1331, 1332. Considering the circumstances recited by police officers here establishing the manner in which the items were stored and identified by the police, the trial court properly admitted the items into evidence. *Simmons v. State* (1987), Ind., 504 N.E.2d 575, 578; *Salahuddin v. State* (1986), Ind., 492 N.E.2d 292, 293; *Sons*, 502 N.E.2d at 1332.

## II

Daniel claims the trial court's Final Instruction No. 20 was contradictory, inconsistent, and placed undue emphasis on the issue of flight. Final Instruction No. 20 read:

Flight of the accused is a circumstance which you may consider and from which you may draw, in connection with the other evidence presented, an inference of guilt.

This instruction was a proper statement on the law of flight considering the evidence showed Daniel fled from the police when they attempted to apprehend him. *Dalton v. State* (1987), Ind., 504 N.E.2d 568, 570; *Baker v. State* (1986), Ind., 491 N.E.2d 524, 526. Daniel's claim of undue emphasis arises from the fact he was also charged with resisting law enforcement and Final Instruction No. 16 instructed the jury that:

The crime of resisting law enforcement is defined by statute as follows:

A person who knowingly or intentionally flees from a law enforcement officer after the officer had, by visible or audible means, identified himself and ordered the person to stop, commits resisting law enforcement, a class A misdemeanor.

To convict the defendant the State must have proved each of the following elements:

The defendant:

1. fled from Donald Bender a law enforcement officer

2. after the officer had, by visible or audible means, ordered the defendant to stop.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of resisting law enforcement, a class A misdemeanor.

Daniel does not claim Final Instruction No. 16 is an improper instruction for Count II, resisting law enforcement, nor that Final Instruction No. 20 is an improper instruction as it applies to Count I, robbery. He claims the giving of No. 20, in addition to No. 16, unduly emphasized flight and also caused the issue to be contradictory and inconsistent to the jury. We see no error presented on this issue. It was proper to instruct the jury on resisting law enforcement, an element of which was fleeing from police when they demonstrated an intent to apprehend him. It also was proper for the court to inform the jury that flight can be considered as a circumstance from which the jury may draw in connection with other evidence presented an inference of guilt of the defendant as to the robbery charge. The State's evidence supported both instructions and the court's decision to give them presents no reversible issue.

## III

Finally, Daniel claims the court erred in entering judgment of conviction upon the jury's verdicts due to discrepancies in the testimony of State's witnesses, Officers Lapossa and Bender. Daniel claims his conviction should be reversed because the discrepancy renders the offi-

cers' entire testimony so incredible as to be unworthy of belief. Daniel refers to the testimony of both officers in which Lapossa stated the chase ensued at speeds of 55 to 60 m.p.h., while Bender testified the speed was 30 to 40 m.p.h.; Lapossa testified the knife was found three to four feet from Daniel's car while Bender testified it was found very close to the door of the car; Lapossa testified Bender struggled with Daniel at the scene in order to handcuff him and Bender testified Lapossa struggled with Daniel in that manner. These inconsistencies in the statements of the witnesses go to the weight of their testimony and are not of a nature to render the evidence incredible as a matter of law. *Kappos v. State* (1984), Ind., 465 N.E.2d 1092, 1096. It is the province of the jury to weigh the evidence and determine the credibility of the witnesses. If the jury encounters conflicts, it is their duty to reconcile them. *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1056, 1059. The evidence, including that of these two officers, was substantial, and sufficient to support the jury verdicts on the essential elements of the offense beyond a reasonable doubt.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.