Gregory L. BERGFELD, Appellant,

v.

STATE of Indiana, Appellee.

No. 49S00–8607–CR–689.

Supreme Court of Indiana.

Dec. 15, 1988.

Sheila K. Zwickey, Rushville, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in appellant's conviction of Possession with Intent to Deliver Cocaine, a Class A felony, for which he received a sentence of thirty-five (35) years; Possession of Diazepam, a Class D felony, for which he received a sentence of four (4) years; and Carrying a Handgun Without a License, a Class A misdemeanor, for which he received a sentence of one (1) year, all sentences to run consecutively.

The facts are: On April 28, 1985, Officer Odle of the Indianapolis Police Department received a radio dispatch which sent him to a residence on Epler Avenue. At the residence, J.M. informed Odle that appellant and his codefendant, Robert Orth, abducted her from a local nightclub and took her to a motel on Post Road. In the motel room, she was held at gunpoint, tied up, injected with cocaine, and repeatedly raped by both men. After the men consumed drugs and passed out, J.M. escaped from the motel room and took a cab to the residence on Epler Avenue and called police.

Officer Maxey was sent to the motel to investigate the incident. The hotel clerk informed him that Orth had registered and paid for Room 117 on April 27. Several officers were placed in and around the motel to watch the room. At approximately 11:30 a.m., police asked the hotel clerk to call Room 117 and ask whether they planned to check out at noon or stay another day. Appellant told the clerk that he would come to the desk and pay for another day in a few minutes.

Shortly thereafter, police watched appellant leave the motel room, get in his car and quickly drive out of the parking lot. Police followed appellant and, driving directly behind him, turned on their flashing red lights. Appellant accelerated quickly and police were able to surround his vehicle and force him off the road. As appellant stepped out of his vehicle, police noticed a gun in his right rear pocket. They removed the gun from his pocket and transported him back to the motel.

Police then knocked on the door of Room 117 and identified themselves. Orth opened the door. Police entered and saw white powder and some scales on a table. Orth was arrested. Upon a warrantless search, police found narcotics "cutting" agents, a grinder, a sifter, plastic sandwich bags, small bottles, and other drug paraphernalia. A forensic chemist determined that the seized items were seven tablets of Diazepam and over ten grams of cocaine.

Appellant first argues the trial court erred in denying his motion to suppress certain evidence found in his motel room. He contends that there was no probable cause for his arrest and the warrantless search of the motel room violated his Fourth Amendment right of protection against unreasonable searches and seizures.

■ An arrest without a warrant is permissible if, at the time of the arrest, the arresting officer had probable cause to believe the defendant had committed a felony.

Probable cause exists when, at the time of the arrest, the arresting officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the defendant committed the criminal act in question. *Collins v. State* (1987), Ind., 509 N.E.2d 827.

■ In the present case, the information supplied by the informant and appellant's attempted getaway were sufficient probable cause to justify his arrest.

■ A warrantless search is not illegal when police have probable cause to believe the search will produce evidence that a crime has been committed and are faced with exigent circumstances which render the procurement of the warrant impractical. Probable cause exists where the facts and circumstances with the knowledge of the officer making the search are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed. *Robles v. State* (1987), Ind., 510 N.E.2d 660.

■ In appellant's case, police acted upon the information from an alleged rape victim that appellant and Orth had kidnaped her, injected her with cocaine, and had possessed and consumed cocaine in the motel room. They had probable cause to believe that an offense had been or was being committed. Because appellant and Orth still occupied the room in which the alleged offenses occurred, it was reasonable for them to believe that a search of the room would produce evidence of the crimes.

Further, it would have been impractical for police to delay the search until a warrant was issued. A postponed search could have resulted in the disappearance of appellant and the evidence with no means of tracing his whereabouts. We find that sufficient probable cause and exigent circumstances existed to justify the warrantless search of appellant's motel room.

■ The record shows that immediately after police entered appellant's motel room and detained Orth, they saw a white powdery substance, a scale, and a device used for smoking marijuana in plain view. Grocery bags on the bed contained narcotics and drug paraphernalia. Because police were lawfully in a place where they could view the property seized, the seizure of the evidence was proper under the plain view doctrine. *Clark v. State* (1986), Ind., 498 N.E.2d 918. The trial court did not err in denying appellant's motion to suppress.

Appellant argues that the evidence is insufficient to sustain his convictions of possession with intent to deliver cocaine and possession of diazepam. He asserts that there is no evidence that the drugs belonged to him, especially considering the fact that he had no drugs and only a small amount of money with him when he was arrested.

Appellant acknowledges that this Court will not reweigh the evidence or judge the credibility of the witnesses. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

■ The State does not need to prove actual physical possession to establish an accused's possession of illegal drugs, but needs only to prove constructive possession. Constructive possession is the intent and capability to maintain dominion and control over the illegal drugs. Proof of a possessory interest in the premises in which the illegal drugs are found is adequate to show the capability to maintain dominion and control over the items in question. However, when possession of the premises is not exclusive, the inference of intent must be supported by additional circumstances pointing to an accused's knowledge of the nature of the controlled substances and their presence. *Davenport v. State* (1984), Ind., 464 N.E.2d 1302, *cert. denied*, 469 U.S. 1043, 105 S.Ct. 529, 83 L.Ed.2d 416.

■ Both the record and appellant's brief make it clear that he spent the night in the motel room, provided money for its rental and planned to spend another night there. These facts, coupled with appellant's attempt to escape from police, were sufficient to show he knew of the presence and nature of the drugs in the motel room. *Id.*

■ Appellant next argues that the trial court erred in allowing a police officer to testify as an expert about the usual way narcotics are packaged and sold. He contends that because no foundation was laid to qualify the witness as an expert, his objections to the admission of the testimony should have been sustained.

A police officer who discovered scales in the motel room testified that he had been a narcotics officer for over five years, that he had trained in both standard and advanced narcotics investigation in federal Drug Enforcement Administration Schools, and that he had made approximately three to four hundred arrests as a narcotics officer. He was then asked whether he had encountered the type of scales found in appellant's motel room. Over appellant's objection, he was allowed to testify that the scales were typically used to measure different types of controlled substances by weight or dosage units.

An expert witness is one who, due to his experience or education, has knowledge of a certain subject about which persons with no particular training are incapable of forming an accurate opinion. *Wade v. State* (1986), Ind., 490 N.E.2d 1097. The trial court has broad discretion in determining qualifications of experts and in admitting opinion evidence. *Id.*

We find that the officer's qualification as an expert was sufficiently established and there was no abuse of trial court discretion.

■ Appellant argues the trial court erroneously denied his motion for mistrial. He believes that because members of the jury observed him wearing handcuffs while his codefendant Orth remained unrestrained, the jury was left with the impression that he was more guilty than Orth. Appellant avers that the prejudice from this error is apparent because the jury found Orth to be guilty of the less serious Class D felony of possession.

A ruling on a motion for a mistrial is made within the trial court's discretion. The fact that a defendant has been seen by jurors while being transported in handcuffs is not a basis for reversal, absent a showing of actual harm. *Jenkins v. State* (1986), Ind., 492 N.E.2d 666.

During a brief hearing on this matter, appellant stated that he believed it was very likely that certain jurors saw him in handcuffs while being transported to the courtroom, but he could not attest to the fact that they saw him for certain.

Even if there was evidence that the jurors did in fact see him handcuffed, appellant has shown no prejudice because jurors would reasonably expect that anyone in police custody would be restrained, regardless of the nature of the charge against the accused. *Id.*; *Malott v. State* (1985), Ind., 485 N.E.2d 879. Because appellant has not established that jury members improperly saw him handcuffed or that he was harmed thereby, we find no error in the denial of his motion for mistrial.

■ argues the trial court erred in denying his motion to impeach the testimony of his codefendant, Robert Orth. Orth testified on his own behalf during their joint trial. During direct examination, he stated he only possessed a small amount of cocaine but denied owning or knowing about any of the drugs or paraphernalia found in the room.

Prior to cross-examining Orth, appellant's counsel requested that he be allowed to ask Orth if he knew the penalty for dealing in cocaine in Indiana. He acknowledged that under the general rule, the jury should not be advised of a possible penalty, but he emphasized that the purpose of his inquiry was solely for impeachment. The trial court denied his request, and appellant asserts that the erroneous limitation of his cross-examination requires a new trial.

The trial judge has discretion to determine the scope of cross-examination, and only a clear abuse of that discretion warrants a reversal. *Carter v. State* (1987), Ind., 505 N.E.2d 798.

Appellant cites *Jarrett v. State* (1986), Ind., 498 N.E.2d 967 (Givan and Pivarnik, JJ., dissenting) in which this Court held that significant harm results when the jury is prevented from learning the extent of benefit received by witnesses who accepted

a plea bargain in exchange for their testimony. We further held that the exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

Appellant's case differs from *Jarrett* in that Orth received no plea bargain or patent benefit for his decision to testify. Furthermore, though appellant's defense counsel was precluded from cross-examining Orth about the precise penalties of Class A, B, C and D felonies, he did elicit testimony from Orth which showed he did understand the seriousness of the greater offense and had an interest in exculpating himself. After Orth admitted using a small amount of cocaine, the following colloquy occurred:

"You are aware aren't you, Mr. Orth that it is [a] much more serious offense ... isn't it Mr. Orth, to possess cocaine with intent to distribute it in an amount in excess of three grams then [sic] it is to simply possess a small amount?"
"Yes."

\* \* \* \* \* \*

"And that difference between those two types of conduct is a very important difference to you, isn't it?"
"Yes."
"Personally?"
"Yes."

This testimony sufficiently informed the jury of Orth's knowledge about the seriousness of the greater offenses and his motivation for testifying on his own behalf. We find that appellant was not prejudiced from the denial of his request to discuss the specific possible sentence.

Appellant argues the trial court erred by refusing to give his Tendered Instruction No. 3, which states:

"A person commits an offense only if he voluntarily engages in violation of the statute defining the offense. However, a person who omits to perform an act commits an offense only if he has a statutory, common law or contractual duty to perform the act."

Appellant believes the evidence presented at trial indicated that he only visited the motel room but did not stay there. Therefore, there is no evidence to show that he was in actual or constructive control of the items in the room. Appellant concludes that the jury should have been alerted that he committed no crime by failing to report Orth's possession of the controlled substances, and the refusal of his Tendered Instruction No. 3 was prejudicial error.

To establish that the trial court improperly rejected his tendered instruction, appellant must show that the instruction was a correct statement of the law, that it was required by the law, facts, and evidence of the case, and the tendered instruction was not covered by any of the other instructions actually given to the jury. *Carter v. State* (1987), Ind., 512 N.E. 2d 158.

Appellant's tendered instruction was not required by the law, facts, and evidence of this case. Contrary to appellant's assertion that he only visited the room, the evidence is sufficient for the jury to find that appellant stayed in the room and knew of the presence and nature of the drugs there. We find no error in the refusal of his instruction.

Appellant argues error occurred when the trial court refused his Tendered Instruction No. 5, which defined the offense of visiting a common nuisance, a Class B misdemeanor. He believes that visiting a common nuisance is a lesser included offense of dealing in cocaine, and the instruction was consistent with the facts of the case.

The test for determining whether it was error to refuse an instruction of a lesser included offense is: 1) whether the language of the statute and the charging document necessarily included the lesser offense in the greater; and 2) whether evidence was introduced at trial to which the included offense instruction was applicable. *Roland v. State* (1986), Ind., 501 N.E.2d 1034. The evidence must be subject to the interpretation not only that the lesser offense was committed, but also that the greater offense was not. *Gordon v. State* (1986), Ind., 499 N.E.2d 228.

In appellant's case, the evidence shows that the greater offense of dealing in cocaine was committed. Therefore, the trial court did not err in refusing appellant's tendered instruction.

Appellant asserts the trial court failed to set forth sufficient aggravating circumstances to support the imposition of an increased sentence.

When a trial court imposes an increased or consecutive sentence, the record must show a consideration by the judge of the facts of the specific crime and the relation of the sentence to the objectives to be served by that sentence. *Smith v. State* (1986), Ind., 491 N.E.2d 193. The statement of the court's reasons for selecting the sentence does not reflect such a consideration. When a trial court has imposed a sentence without giving a sufficient statement supporting that sentence, the proper remedy is to remand the case to the trial court for a more specific statement or the imposition of the standard sentence. *Frappier v. State* (1983), Ind., 448 N.E.2d 1188.

This case is remanded to the trial court for proper sentencing pursuant to this opinion. The trial court is in all other things affirmed.

PIVARNIK, J., concurs.

DICKSON, J., concurs in result without separate opinion.

SHEPARD, C.J., dissents with separate opinion in which DeBRULER, J., concurs.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The United States Supreme Court long ago determined that the protections of the Constitution were non-suspendable.

"The Constitution of the United States is a law for ruler and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times and under all circumstances."

*Ex Parte Milligan*, 4 Wall. 2, 71 U.S. 2, 18 L.Ed. 281 (1866).

The majority of this court apparently disagrees. It realistically includes an addendum to these provisions reading "except in the war on drugs". It seems this "war" is no longer of the same class as other wars. Rather, the war on drugs knows no constitutional limitations. It now is able to transcend constitutional boundaries guaranteeing the security of the home and justifies warrantless entry into the living room of the American family. Why this particular "war" is able to conquer fundamental rights and privileges is unexplained. In the zest to eradicate the drug culture in our society this war has apparently been elevated to a level above that held by the Constitution.

At about 7:00 a.m. on Sunday, April 28, 1985, J.M., a drug dealer, drug user, prostitute, exotic dancer, and one time former police informant, told police that appellant, her boyfriend, and a man named Orth, had abducted her at gun point at 1:00 p.m. the day before from a nightclub parking lot and held her in a motel room until she had been able to make her escape. She claimed that she had been raped and sodomized and forced to inject cocaine, and that the two men had also used drugs.

At about 10:30 a.m., armed with this information, the police placed the motel room, occupied by the two men, under surveillance. The police were not acquainted with the two men. Shortly thereafter appellant emerged from the room, got in his car and quickly drove out of the parking lot. Police followed him and, driving directly behind him, turned on their flashing red lights. Appellant accelerated quickly but police were able to surround his vehicle and force him off the road. After being so stopped appellant stepped out of his car without prompting, and the police noticed a gun in his right rear pocket. They removed the gun from his pocket, arrested him, and transported him back to the motel.

A uniformed officer and two others approached the door of the room with weapons drawn and knocked on it. They had no

warrant and had not attempted to get one. Orth then pulled the curtain back and looked out. He opened the door after vigorous and repeated requests were made, and they simply forced their way in after the door was opened. The trial prosecutor stipulated that Orth did not open the door by consent. Once inside the officers saw white powder and some scales on a table. Orth was arrested. Upon searching the room, the police found narcotics "cutting" agents, a grinder, a sifter, plastic sandwich bags, small bottles, and other drug paraphernalia. A forensic chemist determined that the seized items were seven tablets of Diazepam and over ten grams of cocaine.

Official action intruding into a residence and searching it is restricted by the Fourth Amendment which provides a constitutional means for the police to gather information to be used in criminal prosecutions. Evidence obtained by means which are not constitutional is not admissible.

"... the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn', and there must be 'a showing by those who seek exemption * * * that the exigencies of the situation made that course imperative.' '[T]he burden is on those seeking the exemption to show the need for it.'"

*Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The majority opinion designates the following as exigent circumstances:

(1) the police had probable cause to believe that an offense had been or was being committed;

(2) it would be impractical for the police to delay the search until a warrant was issued;

(3) A postponed search could have resulted in the disappearance of appellant and the evidence with no means of tracing his whereabouts.

Probable cause is not an exception to the warrant requirement and no amount of probable cause can justify a warrantless entry and search of a residence. In addition to probable cause, exigent circumstances must be present. *Robles v. State* (1987), Ind., 510 N.E.2d 660. Exigent circumstances include:

(1) risk of bodily harm or death;

(2) to aid a person in need of assistance;

(3) to protect private property;

(4) actual or imminent destruction or removal of evidence before a search warrant may be obtained.

*Sayre v. State* (1984), Ind.App., 471 N.E.2d 708.

As noted above, probable cause is not the equivalent of exigent circumstances, so the fact police may have had probable cause to believe an offense had been or was being committed did not justify a warrantless entry and search. Impracticality has yet to be recognized as worthy of overriding a constitutional requirement. Judges are not as easily accessible on Sunday but they are accessible. The assertion that delay might result in the disappearance of appellant and the evidence is the only proposition which even comes close to a recognized exigent circumstance. However, that assertion is false. Appellant was already in custody at the time of the decision to enter and search the motel room. His opportunities to disappear with the evidence were therefore limited. Further, were the potential flight of Orth, the occupant of the motel room, offered as an exigent circumstance, it would not suffice. Orth was unaware that appellant had been arrested and had indicated no intention to flee or destroy the drugs. He had informed the motel desk that he intended to spend another night. It is pure speculation that Orth would destroy over ten grams of cocaine on a whim or through consumption. The motel room was surrounded and the victim was readily available at the scene to supply an affidavit of probable cause for issuance of a search warrant. The warrantless entry and search were violative of the Fourth Amendment and all evidence seized pursuant thereto should have been suppressed.

The majority opinion sets a dangerous precedent by finding exigent circumstances in mere probable cause contrary to the warrant requirement. The rationale expressed by the opinion leads to the conclusion that probable cause to believe drugs are located in a private home justifies entry and search of that home without a warrant. This is contrary to all existing precedent and constitutionally unsupportable.

SHEPARD, Chief Justice, dissenting.

Symptomatic of the majority's treatment of the Fourth Amendment in this case is its flat declaration: "An arrest without a warrant is permissible if, at the time of the arrest, the arresting officer had probable cause to believe the defendant had committed a felony." The subsequent suggestion is virtually that warrants are a good idea "when practical" and that they are "impractical" whenever police believe that a suspect is inside a dwelling.

I regret that such views have achieved a majority in this appeal, but I regard the opinion as a rogue, far enough outside the mainstream of Fourth Amendment jurisprudence that it will not serve as precedent.

DeBRULER, J., joins in this dissent.