**Gerald R. ADAMS, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff Below).**

**No. 71A03–8903–CR–84.**

Court of Appeals of Indiana,
Third District.

Aug. 29, 1989.

---

Aladean M. DeRose, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

Gerald R. Adams appeals his conviction of auto theft, a Class D felony, and resisting law enforcement, a Class D felony, presenting the following issues for our review:

 I. Whether the evidence supporting Adams' conviction of auto theft was obtained constitutionally?

II. Whether Adams drove the Fiat so as to constitute a "substantial risk of bodily injury to another person"?

III. Whether Adams was found guilty of resisting law enforcement based upon an unconstitutional section of that statute?

IV. Whether a witness's conviction of attempted rape can be used to impeach that witness?

V. Whether Adams was denied the effective assistance of counsel?

VI. Whether the trial court erred by not instructing the jury that all reasonable hypotheses of innocence must be excluded to convict upon circumstantial evidence alone, thus denying Adams of a fair trial?

VII. Whether the trial court erred by giving an instruction on flight as being evidence of the consciousness of guilt, thus denying Adams of a fair trial?

VIII. Whether the trial court erred in not giving an instruction on the culpability required for reckless conduct even though Adams was not charged with reckless conduct?

IX. Whether the trial court erred in giving an instruction which stated that the jurors were to presume that the witnesses were telling the truth?

X. Whether the trial court erred in failing to issue an instruction to cure the prosecutor's misstatement made during closing argument?

Affirmed.

On May 3, 1988, the Elkhart Police Department received a call, which informed them that a Gerald Adams would be driving a stolen brown or blue Fiat in the Central Park that afternoon. Although the department had received no calls concerning a stolen Fiat, and calls made to Elkhart garages by one of the detectives proved fruitless, the information concerning Adams and the stolen Fiat was given to the police radio operator.

Based upon this information, Officer Sherbun was sent to Central Park at approximately 3:30 p.m. This proved fruitless, but after investigating other parks, Sherbun returned to Central Park and saw a sports car near one of the park's entrances. Upon approach, Sherbun noted that it was a blue Fiat having an Elkhart plate. Sherbun also recognized Gerald Adams as the driver.

After trailing Adams for a few blocks, Sherbun decided to stop Adams' vehicle and investigate the situation. Accordingly, Sherbun activated his lights to indicate that Adams was to stop. However, rather than heed Sherbun's "order" to stop, Adams sought to elude the police car; a "chase" resulted in Sherbun's pushing the Fiat off of the road.

Upon approaching the Fiat, Sherbun noticed that the trunk lock was gone, that no key was in the ignition, and that two (2) wires were dangling from the dash. Later, this very Fiat was reported stolen.

Adams was charged with and found guilty of Automobile Theft, a Class D felony, (IC 35–43–4–2.5(b)) (Supp.1988), and Resisting Law Enforcement, a Class D felony (IC 35–44–3–3) (Supp.1988).

I.

*Auto Theft*

■ Adams argues that at the time Sherbun first activated his squad car lights, directing Adams to stop, Sherbun had no probable cause to stop, i.e., arrest, Adams.

While the trial proceeded on whether Sherbun had the requisite ability to stop and arrest Adams based on the "felony in progress" theory, we need not discuss the propriety of this argument.

[P]robable cause is not needed for an investigatory stop. A police officer may stop a person upon a reasonable suspicion grounded in specific facts that further investigation is necessary. [Citations omitted.] A vehicle fitting the description of one used by the crime suspect provides reasonable suspicion for

making an investigatory stop. [Citation omitted.]

*Coates v. State* (1989), Ind., 534 N.E.2d 1087, 1092.

Here, at the time Sherbun decided to stop Adams and turned on the squad car lights, Sherbun had come close enough to the Fiat to note that Adams was the driver and that the Fiat matched "the description of one used by the crime suspect." *Id.* Further, although the informant's reliability may have been untested, "probable cause may be established by verification of extrinsic facts which sufficiently demonstrate reliability of the tip." *Randall v. State* (1983), Ind., 455 N.E.2d 916, 920.

Here, both the vehicle as well as its driver were identified to match the information given by the informant; Sherbun had a reasonable suspicion to make an investigatory stop of Adams' vehicle. Consequently, the evidence seen by Sherbun upon that stop would be constitutionally obtained.

## II.

### *Substantial Risk of Bodily Injury*

■ Adams contends that the trial court found that Adams' driving constituted a "substantial risk of bodily injury to another person." Adams argues that "[a] substantial risk is a real and significant one, not simply possible or conjectural." (Appellant's Brief, p. 14). However, this overlooks the noun used—"risk," defined as a "danger; peril; hazard; to expose to danger or possible loss." *Webster's Dictionary*, 1987, p. 320.

Thus, Adams argues that because "not one vehicle or pedestrian was ever put in *actual* harm by his driving," (Appellant's Reply Brief, p. 5; emphasis added), no substantial risk occurred. However, no *harm* need have *occurred* for the *risk* of harm, i.e., the *possibility of harm*, to be present. Indeed, if someone *had* been seriously injured, the resisting law enforcement charge would have been elevated to a Class C felony pursuant to IC 35–44–3–3(b)(2) (Supp.1988).

■ When this court reviews for sufficiency of evidence, we neither reweigh the evidence nor judge witness credibility, looking instead to the evidence most favorable to the judgment along with its reasonable inferences; we will reverse only if there is no substantial evidence of probative value supporting the conviction. *Litel v. State* (1988), Ind., 527 N.E.2d 1114, 1115.

Here, Sherbun testified that Adams drove at speeds up to 80 mph, crossed the center line, and ran stop signs. With no way of knowing that no other traffic would be in the area, let alone pedestrians, we cannot say there is not substantial evidence of probative value to support a finding that such driving constituted operating a vehicle so as to constitute a "substantial risk of bodily harm." The risk was real even if actual harm never materialized.

## III.

### *Resisting Law Enforcement Statute*

■ Adams contends that the paragraph of the resisting law enforcement statute under which he was charged is unconstitutional because it does not mandate that the officer be "lawfully engaged in the execution of his duties as an officer" or be "authorized" as required by the other paragraphs of that section. However, because Officer Sherbun *was* "lawfully engaged in the execution of his duties as an officer" when he attempted to stop Adams, Adams' claim is merely a hypothetical situation which we cannot address.

## IV.

### *Attempted Rape Conviction*

■ In *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, our Supreme Court delineated the two types of crimes which are admissible to impeach the character of a witness: certain "heinous" crimes, which by their very nature impair a witness's credibility, and those crimes which actually reflect upon the witness's propensity for telling the truth.

The first prong of *Ashton* noted that some crimes are so "infamous" in nature that they render a witness incompetent by

their very heinousness. The *Ashton* court concluded:

> this court is bound by [the Indiana Code] which permits impeachment by showing prior convictions for crimes which would have rendered a witness incompetent. These crimes are: treason, murder, rape, arson, burglary, robbery [,] kidnapping, forgery and wilful and corrupt perjury.

*Ashton, supra,* 279 N.E.2d at 217.

The second prong of *Ashton* held that a witness can also be rendered incompetent by the commission of a crime reflecting upon that person's propensity for telling the truth. Here, the court stated:

> [s]imply stated, either the particular criminal conviction reflects on the witness' credibility for truth and veracity, or it does not. If the particular conviction is for a crime which has a tendency to reflect on the individual's credibility for truth and veracity, such evidence should not be excluded; if the prior conviction is for a crime which has no bearing whatsoever on his credibility for truth and veracity, such evidence should not be admitted.

*Ashton, supra,* 279 N.E.2d at 216.

In the case at hand, although both parties concede that a conviction for the charge of rape would be properly admissible pursuant to the *Ashton* rule, Adams contends that a conviction for attempted rape should be equated to rape, and thus be admissible pursuant to the *Ashton* rule.

The Indiana Code defines "attempt" as follows:

> A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted....

West's A.I.C. § 35–41–5–1(a). However, also pertinent to the definition of "attempt" is that the perpetrator did not complete the crime because of an "involuntary frustration."

> Where there have been overt acts preparatory to commission of an offense cou-

pled with specific intent, which may be inferred from certain acts, and it may be reasonably inferred that crime would have been committed *but for some form of involuntary frustration,* these acts may be deemed an attempt. [Citation omitted.] (Emphasis added.)

*Washington v. State* (1987), Ind., 517 N.E.2d 77, 79.

Thus, given the fact that an "attempted rape" is only a frustrated rape, we perceive no difference between the two for the purposes of the *Ashton* rule.

The heinousness of the crime of rape is not lessened merely because the rapist was prevented from completing the rape. If rape reflects on the character of the rapist/witness, no reason exists to differentiate and exonerate the character of a rapist who, because of involuntary reasons did not complete the rape.

Accordingly, we hold today that those infamous crimes listed in *Ashton* include a conviction for attempt of those same crimes.

■ Here, however, although the exclusion of Brown's conviction of attempted rape was error, it was harmless. "While the evidence may have been admissible, its exclusion constitutes reversible error only if it is demonstrated that the error resulted in such prejudice that the appellant was denied a fair trial." *Doss v. State* (1989), Ind.App., 536 N.E.2d 516, 518.

As stated in our discussion of Issue VI, sufficient direct evidence exists to support Adams' conviction for Auto Theft. Thus, even had Brown's character been impugned by the admission of Brown's conviction for attempted rape, Brown's testimony was irrelevant insofar as Adams had actual possession of the stolen Fiat. Consequently, the excluded evidence does not warrant reversal.

## V.

### *Effectiveness of Counsel*

■ Adams contends that he was denied the effective assistance of counsel, pointing particularly to the fact that the defense

counsel made no objection at trial "to all evidence obtained through Mr. Adams' arrest after Mr. Adams' Motion to Suppress was denied." (Appellant's Brief, p. 18.) Adams claims that the above constitutes fundamental error.

 Upon review, the assistance of counsel is measured against a "reasonably effective assistance" standard. *Burr v. State* (1986), Ind., 492 N.E.2d 306, 307–308. Thus, judicial scrutiny should be deferential and undistorted by hindsight, with "[i]solated poor strategy, experience, or bad tactics" not implying ineffectiveness; the appellant must show "strong and convincing evidence" to overturn a presumption of competence. *Burr, supra,* at 308, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To prevail, the appellant must show that counsel committed particular, unreasonable errors, resulting in prejudice, such that, but for those errors, it is reasonably probable that the proceeding would have resulted differently. *Id.*

Here, while Adams contends that his attorney should have objected to the admission of evidence obtained after Adams' arrest, he shows no prejudice resulting therefrom. Furthermore, in light of the fact that we have earlier held Adams' stop to be lawful, we fail to see how such prejudice *can* be shown.

Consequently, we find no merit to Adams' contention.

## VI.

### *Hypotheses of Innocence*

Adams claims the trial court erred by not instructing the jury that all reasonable hypotheses of innocence must be excluded, because his conviction for auto theft was based upon circumstantial evidence alone. However, he overlooks direct evidence implicating him in the crime.

 When reviewing the refusal of a tendered instruction, this court must determine whether the tendered instruction correctly stated the law, whether the law, facts, and evidence of the case required the instruction, and whether the instruction

was covered by those instructions actually given. *Bergfeld v. State* (1988), Ind., 531 N.E.2d 486, 492.

 Case law indicates that when circumstantial evidence is the only evidence, an instruction must be given indicating that every reasonable hypothesis of innocence must be excluded. Our Supreme Court specifically stated:

> While *exclusion of every reasonable hypothesis of innocence is* not the proper appellate standard of review in sufficiency matters, it is *the correct standard at trial and a defendant is entitled to an instruction accordingly.* [Citations omitted.] (Emphasis added.)

*Myers v. State* (1989), Ind., 532 N.E.2d 1158, 1159.

Adams' tendered instruction stated, in part:

> In a case where circumstantial evidence alone is relied on, the circumstances disclosed by the evidence must be of such character and strength as to exclude every reasonable hypothesis except guilt. . . .

Record, p. 62. At trial, the court declined to give this instruction. The State argues in its brief that "[t]he instructions regarding the presumption of innocence can fairly be read as instructions to exclude reasonable hypothesis of innocence prior to reaching a verdict of guilty." (Appellee's Brief, p. 22.) We disagree; the instructions given do not cover the tendered, excluded instruction.

 However, although the excluded instruction was not covered by the instructions actually given by the court, and despite the fact that the tendered instruction on the exclusion of all hypotheses of innocence correctly states the law, the facts, law, and evidence of the case do not require the giving of that instruction.

Here, while the testimony of Brown and Adams differed as to who obtained the Fiat, the undisputed facts clearly indicate that Adams was behind the wheel of the vehicle when stopped by Officer Sherbun, wires were dangling from the ignition and the ignition itself was torn apart. These

facts are direct evidence that the vehicle was stolen.

The statute in question reads:

\* \* \* \* \* \*

(b) A person who knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with intent to deprive the owner of: (1) the vehicle's value or use; or (2) a component part ... of the vehicle; commits auto theft, a Class D felony. However, the offense is a Class C felony if the person has a prior conviction of an offense under this subsection or subsection (c).

(c) A person who knowingly or intentionally receives, retains, or disposes of a motor vehicle or any part of a motor vehicle of another person that has been the subject of theft commits receiving stolen auto parts, a Class D felony. However, the offense is a Class C felony if the person has a prior conviction of an offense under this subsection or subsection (b).

West's A.I.C. § 35–43–4–2.5 (Supp.1988.)

Direct evidence was before Officer Sherbun that the Fiat was stolen; at trial, Adams testified as follows:

Q. [Prosecutor] Did you have several cars that had the vent popped out and hot wired, and the lock was out of the trunk?

A. [Adams] That did put a question mark on me, yes.

Q. A question mark? Like, "Is this car stolen?"

A. Yeah.

Q. So you had an inkling that the car might be stolen?

A. I didn't really know where he got it from.

Q. Well, is it possible that you didn't want to admit it, but you knew it was stolen?

A. Possibly, yes.

\* \* \* \* \* \*

Q. And you're saying you didn't know?

A. I didn't steal it.

Record, p. 492, 11. 25–26; p. 493, 11. 1–9; 25–26.

Consequently, because there was direct evidence that Adams was in possession of a stolen vehicle and that he had "knowledge" of that fact, the trial court did not err in refusing to give the tendered instruction indicating that to convict upon circumstantial evidence alone, all reasonable hypotheses of innocence must be excluded. Direct evidence indicated Adams had violated the "Auto Theft" statute.

## VII.

### *Flight*

Adams contends that the trial court erred and denied him of a fair trial by giving an instruction on flight as being evidence of the consciousness of guilt. At trial, Adams argued that such an instruction placed undue emphasis on "particular evidence," (Record, p. 529), and, in his brief, Adams further argues that such an instruction is unnecessary in light of the fact that flight is an element of resisting law enforcement, one of the counts with which Adams was charged. However, in *Daniel v. State* (1988), Ind., 524 N.E.2d 1275, our Supreme Court held that giving an instruction on the law of flight, even though Daniel was also charged with resisting law enforcement, did not place undue emphasis on the issue of flight; the instruction "presented an inference of guilt of the defendant as to the [other] charge." *Daniel, supra,* at 1278. Consequently, Adams' claim is without merit.

## VIII.

### *Culpability*

In his brief, Adams contends that the trial court erred in refusing to give his tendered instruction # 9, which described the culpability required for reckless conduct, even though Adams' conduct was not charged as being reckless. At trial, however, Adams made no such objection, consequently waiving this "issue." *Hodges v. State* (1988), Ind., 524 N.E.2d 774, 787.

*Arguendo,* both resisting law enforcement and auto theft require a "knowing" or "intentional" level of culpability. *See,*

IC 35–43–4–2.5(b) and IC 35–44–3–3. As stated in *Bergfeld, supra,* the requested tendered instruction must be required by law. *Bergfeld, supra,* at 492. Here, the law does not require that an instruction on "recklessness" be given. We note, too, that Adams offers no statutory or case law authority which would support his contention to the contrary.

Thus, we find no error in the trial court's refusal to give an instruction on "recklessness."

## IX.

### Witness Testimony

 Adams contends that the trial court erred by instructing the jury to presume that the witnesses were telling the truth when they testified. Specifically, the court stated:

> You should try to fit the evidence to the presumption that the defendant is innocent, and to the theory that every witness is telling the truth.

Court's Instruction No. 6, Record, p. 40.

At trial, Adams' attorney argued that "[t]here is no presumption or requirement of the jury to accept that a witness is telling the truth, and as such, it should not be in there." Record, p. 529.

In *Tevis v. State* (1985), Ind., 480 N.E.2d 214, while our Supreme Court did not address this particular question, it did approve an instruction which included the following sentence:

> You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth.

*Tevis, supra,* at 215.

We also note that the Indiana Pattern Jury Instructions contain the same instruction:

> You should attempt to fit the evidence to the presumption that the defendant is innocent and *the theory that every witness is telling the truth.* (Emphasis added.)

Indiana Pattern Jury Instructions (Criminal), Preliminary Instruction No. 1.23, p. 25.

Accordingly, the trial court committed no error by giving Instruction No. 6.

## X.

### Prosecutorial Misstatement

 Adams' final contention of error is that the trial court should have issued a curative instruction to address a misstatement made by the prosecutor during closing argument.

During his closing argument, the prosecutor referred to the thoughts of the apprehending officer, even though no testimony existed as to those thoughts. Although Adams' attorney objected and the court sustained the objection, the attorney did not request an admonishment. *See,* Record, pp. 539–540.

Our Supreme Court addressed an identical situation in *Brewer v. State* (1983), Ind., 455 N.E.2d 324. There, the court stated:

> Defense counsel did not request the trial court to admonish the jury to disregard the first two statements complained of, nor did he move for a mistrial. Failing to request an admonishment, or move for a mistrial, based on alleged prosecutorial misconduct generally results in waiver of that issue. [Citations omitted.]
>
> * * * * * *
>
> Sustaining opposing counsel's objections to improper remarks in final argument is usually sufficient to remedy the situation. [Citation omitted.]

*Brewer, supra,* at 327. Accordingly, we find no error here.

Affirmed.

HOFFMAN and ROBERTSON, JJ., concur.