Scott McCORD, Appellant,

v.

STATE of Indiana, Appellee.

No. 68S00–9204–CR–279.

Supreme Court of Indiana.

Oct. 26, 1993.

506

Brent Westerfeld, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

Appellant was tried by jury and convicted of Murder and Conspiracy to Commit Murder. He was sentenced to sixty (60) years for murder and fifty (50) years for conspiracy to commit murder, the terms to be served consecutively. Appellant also was fined $10,000 for each count.

The facts are: The victim in this case, Etta Alexander, worked for appellant and his girlfriend, Pam Resler, in a business owned by them. In April of 1989, appellant and Alexander met with an insurance agent. At that time, appellant paid a cash premium for an insurance policy on Alexander's life. The term of the policy was from April of 1989 to April of 1990. The policy provided that the beneficiary would receive $50,000 in the event of accidental death. Alexander designated Resler as the beneficiary of the policy. Resler was not present at the meeting and was not informed that she was named as the beneficiary.

Subsequently, appellant became angered with Alexander over a financial transaction involving one of his relatives. On several occasions during that summer, appellant offered money to Joseph Arguijo to kill Alexander. Appellant told Arguijo that Alexander had stolen money from him. Appellant offered to obtain a gun and dispose of it after use in the proposed killing. Arguijo refused to kill Alexander. Appellant made a similar offer to Val Haase. Appellant showed Haase the location of the trailer where Alexander lived.

Appellant approached John Sheets in the fall of 1989 about committing a murder for hire. Sheets and Haase burglarized homes and took the stolen property to appellant, who would buy it from them or use the property as credit for payment on a car appellant had purchased for them to use when they committed the burglaries. Haase and Sheets introduced appellant to Jason Buie in January of 1990 and informed appellant that Buie was interested in appellant's offer.

On January 25, 1990, Buie and Sheets went to appellant's home in Muncie where they met with him. Buie told appellant that he would do the job and requested a gun. Appellant told Buie he wanted Alexander dead, and he wanted her death to appear to be accidental. Appellant told Buie he would give him the money for the job within two weeks and that Sheets would get a cut of the money if he did what he was supposed to do. Appellant provided the shotgun, which Buie placed in the backseat of the car he was driving.

Buie and Sheets drove to Alexander's trailer. They asked about the camper her roommate was trying to sell. She invited them into the trailer. Buie then stated he had to go to the car to get something. He returned to the trailer with the shotgun. He shot Alexander two or three times. Buie then ordered Sheets to burn Alexander's body and threatened to kill him if he did not do so. Buie threw a blanket over her body, and Sheets ignited it with a lighter. Buie instructed Sheets to keep his mouth shut.

At approximately 8:45 p.m., neighbors heard sounds like a gunshot or an explosion and the closing of a car door. Within thirty minutes, they saw that Alexander's trailer was on fire. They called the fire department, but by the time firemen arrived Alexander's trailer was completely engulfed in flames. A search was conducted after the fire was extinguished, and a severely burned body was found on or near a kerosene heater. The body was taken to Indiana University Medical Center for an autopsy. A forensic dentist was able to make an identification through comparison of teeth and dental records. The pathologist was able to determine that the cause of death was multiple gunshot wounds.

Examination of the crime scene revealed that neither of the kerosene heaters in the trailer had malfunctioned, and there were no signs of an accidental cause for the fire. The burn patterns on the floor of the trailer and the presence of petroleum distillate in the carpet under the location where the body was found led the deputy fire marshal to conclude that the cause of the fire was arson.

Buie and Sheets returned to appellant's house after they left the trailer. Buie informed appellant that he shot her and had burned the place down. Buie told appellant to dispose of the weapon. Buie and Sheets then went to the car, and Buie gave Sheets $500. After Buie returned the gun to appellant, he and Sheets left. Approximately one hour after Buie and Sheets left, appellant took some long guns from his house to the house where Davey Flowers lived.

Buie and Sheets had rented a room at the Maple Motel earlier in the evening and returned there. Sheets became sick and later told Haase about the events which had transpired at Alexander's trailer. That evening, Buie was seen flashing around bills in large denominations and was overheard saying to someone that he had been paid $4000 by appellant to kill a woman. Buie then drove Sheets and Sheets' girlfriend, Sheila Gregory, to the Super 8 Motel in Danville where Sheets and Gregory stayed.

On the morning of January 26, 1990, Sheets and Gregory were joined by Buie, Haase, and Susan Adams, Haase's girlfriend. When appellant and Resler arrived at the motel, appellant told Sheets that it would be best for him to leave Indiana. Appellant explained that he was going to Nashville, Tennessee and could get jobs for Sheets and Haase. After the two agreed to meet at the Trinity Inn in Nashville, appellant and Resler left with Buie.

Appellant and Resler drove Buie to Millersville, Tennessee. They then met Haase, Sheets, Adams, and Gregory in Nashville. They stayed there three days before returning along with Buie to Muncie, Indiana, where appellant purchased a car for Sheets. Appellant and Resler returned to Nashville before going to Kentucky where they lived for a month. They subsequently returned to Muncie, Indiana.

Buie, Sheets, and Haase returned to Nashville. Sheets and Haase then went to Florida with their girlfriends. Appellant wired money to Haase, Buie, and Sheets in February of 1990.

A week after the victim's death, appellant told Resler that she was the beneficiary of Alexander's life insurance policy. He urged her to call the insurance company. Near the end of February of 1990, appellant told a Muncie automobile dealer that he wanted to buy a late model car but would pay for it after his girlfriend received the money to which she was entitled as beneficiary of Alexander's life insurance policy. Resler filed her claim on March 9, 1990. Appellant ultimately was arrested in Anderson, Indiana.

■ Defense counsel filed a motion to correct error with the trial court and filed affidavits in support thereof. Defense counsel also requested an evidentiary hearing. The State filed no counter-affidavits, but also was permitted, over objection, to present evidence at the hearing. Appellant contends the trial court erred when it allowed the State to present evidence at the hearing after failing to file counter-affidavits.

■ Indiana Criminal Rule 17 provides:

"When a motion to correct errors is supported by affidavits, notice of the filing therefor shall be served upon the opposing party, or his attorneys of record, within ten days after the filing thereof, and the opposing party shall have twenty days after such service to file counter-affidavits; reply affidavits may be filed within ten days after filing of counter-affidavits, which periods may be extended within the discretion of the court for good cause. Such affidavits shall be considered as evidence without the introduction thereof on the hearing on the motion, and shall be a part of the record without a bill of exceptions. If, besides the affidavits, additional evidence is received, the trial court shall cause the court reporter to record all such evidence, and when so transcribed, the same shall be submitted to the judge, who shall certify that it is a true and complete transcript of such evidence, and the same shall be filed with the court and be a part of the record on appeal without being incorporated in any bill of exceptions."

We have held that the trial rules contemplate filing of affidavits which state sufficient grounds in support of the motion to correct error so that an evidentiary hearing is unnecessary. *Kindred v. State* (1988), Ind., 521 N.E.2d 320. A trial court is not required to hold an evidentiary hearing on a motion to correct error. *Calhoun v. State* (1985), Ind., 484 N.E.2d 7. However, the rules provide that the trial court may receive additional evidence at a hearing which the trial court may conduct.

Appellant seems to argue that it was proper for the trial court to grant his request for a hearing during which the court would receive additional evidence from the defense but improper for the trial court to allow the State the same opportunity to present evidence on the allegations of error. While it is true that the State did not file counter-affidavits within the twenty days provided for by the rule, the defense did not intend to have the court limit its consideration to the affidavits. The defense produced additional testimonial evidence.

Appellant correctly cites *Harris v. State* (1981), Ind., 427 N.E.2d 658, for the proposition that an appellate court is bound to accept as true the contents of an uncontradicted affidavit. We have held that the contradiction of an affidavit can be found in the record itself. *Lopez v. State* (1988), Ind., 527 N.E.2d 1119. However, the trial rules provide for the trial court at its discretion to hold an evidentiary hearing on the motion.

The defense was not prejudiced by the State's presentation of evidence at the hearing. The hearing was held on September 24, 1991. The trial court continued the hearing until December of 1991 in order to allow the defense additional time in which to conduct discovery and present rebuttal evidence. The trial court did not err.

■ Appellant claims he should have received a new trial because he presented evidence of an agreement between State's witness Haase and the State which previously was not disclosed. Counsel for appellant discovered a newspaper article concerning an affidavit which was filed by the deputy prosecuting attorney for Delaware County stating that the burglary charge had been dismissed in exchange for Haase's testimony at the request of the Randolph County Prosecutor.

■ The prosecution must disclose all agreements made with a witness which may influence a witness' testimony. *Id.* The duty to disclose arises only when a confirmed promise exists. *Id.* Preliminary discussions are not subject to disclosure. *Id.* When a witness hopes for leniency in exchange for favorable testimony and the State neither confirms nor denies that hope, then an express agreement does not exist. *Id.* Disclosure is not required absent concrete evidence of an agreement. *McBroom v. State* (1988), Ind., 530 N.E.2d 725. We have held that expectations coupled with evidence of a deal between the prosecutor and witness after the in-court testimony of the witness is insufficient to require that a disclosure be made. *Abbott v. State* (1989), Ind., 535 N.E.2d 1169.

Val Haase was arrested on a burglary charge in Delaware County on July 27, 1990. He remained in jail until June 4, 1991 on those charges except for the period of time between October 18, 1990 through January 21, 1991, when he was released on his own recognizances. Geoffrey Rivers was the public defender who represented Haase in Delaware County. Donald McClellan was the deputy prosecuting attorney who handled the case there.

Rivers contacted McClellan to discuss the possibility of dismissal of the charges against Haase in Delaware County. Rivers told McClellan that Haase was expected to testify for the State in the murder trials taking place in Randolph County. McClellan told Rivers that if Haase testified for the State in the cases pending in Randolph County that he would "see about" dismissing the burglary charges. They agreed to adopt a "wait and see" approach to the burglary case. McClellan testified at the hearing on the motion to correct error that he considered that to be a firm offer.

Rivers then contacted the Randolph County Prosecutor, Robert Oliver, suggesting that a Randolph County public defender should be appointed to represent Haase in Randolph County, and that Haase would like testimonial immunity in Randolph County. Oliver contacted Rivers in order to confirm Haase's cooperation in pretrial preparation. No deals were struck between Oliver and Rivers concerning Haase's testimony. Oliver told Haase during their meetings that there were absolutely no deals "from his end."

Haase testified in the McCord trial in Randolph County. In response to the defense request for information concerning deals struck between the State and its witnesses, the State disclosed the deal made with John Sheets. On cross-examination, Haase testified that the prosecution had offered no agreement for his testimony in exchange for dismissal of the charges in Delaware County.

There is a conflict in the evidence as to what promises were made to Haase. In any event, the Delaware County burglary charges against Haase were dismissed.

Haase testified that he "kind of got the idea that if [he] testified, they would dismiss it...." When he was asked whether he believed when he testified that there was a deal, he stated, "I didn't actually know what was happening."

The trial court's finding that no agreement existed at the time of Haase's testimony is supported by substantial evidence. Because the existence of an agreement is a factual question, we will affirm the trial court's decision if it is supported by substantial evidence. *Lopez, supra.* We will not reweigh the evidence or reassess the credibility of witnesses when we review the determination of whether an agreement existed between the State and a witness. *Id.*

Appellant argues the evidence establishes a Due Process violation according the the holding in *Giglio v. United States* (1972), 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104. In *Giglio*, a government witness denied the existence of any agreement for prosecutorial leniency in exchange for testimony. The prosecutor in the case let that testimony go uncorrected because he was unaware of an agreement entered into between the witness and a previous prosecuting attorney. The United States Supreme Court held that the government's lack of knowledge concerning the agreement did not relieve the State of its obligation to correct false evidence which goes before a jury in a criminal trial. Appellant argues that the holding should be expanded here to make the prosecutor in Randolph County accountable for knowledge of the possibility of negotiations between the State and the witness in Delaware County. Because we find the trial court's determination that no agreement existed is supported by substantial evidence, we need not decide this issue.

Appellant also makes the argument that a new trial should be ordered in light of the new evidence which was presented. A defendant must show that: 1.) the evidence has been discovered since trial; 2.) that it is material and relevant; 3.) that it is not cumulative; 4.) that it is not merely

impeaching; 5.) that it is not privileged or incompetent; 6.) that due diligence was used to discover it in time for trial; 7.) that the evidence is worthy of credit; 8.) that it can be produced upon a retrial of the case; and 9.) that it will probably produce a different result. *Clark v. State* (1978), 269 Ind. 90, 378 N.E.2d 850, *cert. denied.*, 439 U.S. 1050, 99 S.Ct. 731, 58 L.Ed.2d 711.

■ Assuming for the sake of argument that the new evidence was proven to exist, a new trial would not be appropriate. The evidence would merely impeach Haase's credibility and the evidence likely would not have produced a different result.

The defense already had impeached Haase's credibility by presenting to the jury evidence of Haase's pending burglary charge in Delaware County. Further, the testimony which Haase gave was corroborated by testimony given by other witnesses and was consistent with statements he initially gave to police officers. The result would likely be the same if a new trial were ordered. The trial court did not err in denying appellant's motion for a new trial.

Appellant argues the trial court erred by enhancing the credibility of witnesses and providing the State with an unfair advantage. He alleges the trial court improperly took over examination of witnesses for the State.

■ We have held that a judge must refrain from acting as an advocate for either party and must maintain an impartial manner. *Abernathy v. State* (1988), Ind. 524 N.E.2d 12. However, a trial judge may question a witness in an effort to promote clarity or dispel obscurity, so long as it is accomplished in an impartial manner and does not improperly influence the jury. *Kennedy v. State* (1972), 258 Ind. 211, 280 N.E.2d 611. To make a showing of reversible error, appellant must show that the trial judge's questioning of the witness was harmful and prejudicial to his case. *Altman v. State* (1984), Ind., 466 N.E.2d 716; *Roseberry v. State* (1980), 273 Ind. 179, 402 N.E.2d 1248.

■ Appellant attacks the trial court's questioning of witness Dr. Mayo, the den-

tist who treated the victim in 1973 and 1974. (At that time, her last name was Miller.) Records maintained by Dr. Mayo were used by Dr. Marlin, the forensic dentist who assisted during the autopsy. Mayo testified that he had treated the victim.

He identified State's Exhibit 37 as a true, full, and correct copy of the dental records of Alexander kept in his office. Mayo then identified State's Exhibit 39 as the envelope containing Alexander's X-rays which were taken at his direction.

The State correctly points out that the questions posed by the trial court were largely cumulative of the questions already asked. The questions clarified the testimony. None of the questions bolstered Dr. Mayo's credibility or suggested to the jury an opinion regarding the guilt or innocence of appellant. Further, because, as appellant states in his brief, there was no *bona fide* dispute regarding the identity of the victim, appellant has failed to show how the questioning was prejudicial.

Appellant also cites other pages of the record as examples of improper questioning by the trial court. He makes no specific argument concerning these portions of the record. However, examination of the record leads us to the conclusion that the questions were posed for the purpose of clarification and were impartial. The trial court did not improperly question State's witnesses.

■ Appellant claims the trial court erred by admitting autopsy photographs over his objection. State's Exhibits 30, 31, and 32 were autopsy photographs of the victim. State's Exhibit 30 shows the victim's head. State's Exhibit 31 shows the victim's lower and upper jaws with the teeth intact, after the jaws were removed from the body. State's Exhibit 32 is a close-up view of the lower jaw of the victim. Appellant objected on the ground that they were irrelevant and cumulative.

■ Photographs are admissible if they are relevant to any material issue in the case. *Dresser v. State* (1983), Ind., 454

N.E.2d 406. A photograph is relevant if a witness would be allowed to testify to the contents of the photograph. *Mueller v. State* (1988), Ind., 517 N.E.2d 788. Relevant evidence need not be excluded simply because it is cumulative. *Dresser, supra.* However, the trial court should weigh the relative probative value of the photograph against the potential inflammatory effect. *Strong v. State* (1989), Ind., 538 N.E.2d 924. We will reverse the trial court only upon a showing of an abuse of discretion. *Shelton v. State* (1986), Ind., 490 N.E.2d 738.

Photographs of a victim's corpse are relevant to proving a victim's identity. *Fisher v. State* (1989), Ind., 541 N.E.2d 520. The three photographs at issue are admissible because they assist the State in proving the identity of the body. The body was severely burned beyond recognition, making identification difficult. Indiana State Police evidence technician John Kelly testified that an autopsy was conducted on the body. He further testified that during the autopsy the lower and upper jaws were removed by Dr. Michael Clark and were given to Dr. Marlin for examination. Kelly testified that he took the photographs during the autopsy.

Dr. Clark, the pathologist who performed the autopsy, testified that the subject of the autopsy was the badly burned body of an unidentified female whose jaws were removed and given to Dr. Marlin. Dr. Clark identified the photographs as those which were taken during the autopsy.

Dr. Marlin identified the photographs as depicting the subject of the autopsy. He testified about his comparison of the teeth removed during the autopsy with the dental records of Alexander. He concluded that they matched.

The photographs were both relevant and admissible to identify the body removed from the crime scene. The photographs helped the witnesses illustrate the process by which the body was identified.

Appellant's argument that error was committed by allowing the photographs into evidence during the testimony of Kelly as opposed to later during the testimony of the doctors likewise fails. We have held that even if evidence is introduced prematurely, the admission is harmless where it becomes relevant by later testimony. *Hooper v. State* (1983), Ind., 443 N.E.2d 822. The State points out that when defense counsel objected to these exhibits he conceded that they would become relevant during the testimony of a pathologist.

Further, as the State points out, the exhibits were not cumulative of the videotape of removal of the body from the crime scene. The videotape showed a less clear image of the body and could not have been identified by the doctors. The trial court did not abuse its discretion by admitting these exhibits.

Appellant claims the trial court erred by instructing the jury on flight. He claims that because the evidence on this issue was disputed the instruction gave undue weight to the evidence.

Appellant does not challenge the existence of evidence supporting an inference of flight. Appellant argues that the instruction emphasized an inference of guilt and placed undue emphasis on the evidence that he left the state after Alexander's murder.

Instructing the jury is within the trial court's discretion. *Tanner v. State* (1984), Ind., 471 N.E.2d 665. We will reverse a trial court's decision only for an abuse of discretion. *Id.*

We have held that flight may be considered. *Menefee v. State* (1987), Ind., 514 N.E.2d 1057. The instruction in the present case is very similar to one which we approved in *Daniel v. State* (1988), Ind., 524 N.E.2d 1275. A flight instruction does not invade the province of the jury or unduly emphasize one piece of the evidence when jurors are told that flight of the accused is a circumstance from which they may draw an inference of guilt when it is considered in connection with other evidence presented. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290.

Appellant claims the instruction is defective in that it fails to inform the jury that it should consider an inference of innocence as well as the inference of guilt. However, this is a factual dispute to be determined by the jury. As appellant points out, the State presented evidence which tended to suggest that appellant fled after the murder was committed. Appellant attempted to show that he had made plans to leave the state at that time. The instruction properly left it to the jury to consider flight as circumstantial evidence to be considered along with other evidence from which they may infer guilt.

Moreover, the trial court instructed the jury regarding the presumption of innocence and that they should attempt to fit the evidence to that presumption. The trial court also instructed that the jury should give the greatest weight to the evidence which they find to be most convincing. The trial court did not err.

The trial court is affirmed.

DICKSON, J., concurs.

KRAHULIK, J., concurs in result without separate opinion.

SHEPARD, C.J. and DeBRULER, J., dissent without separate opinion.