Larry WOODS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 49S00–9507–CR–842.

Supreme Court of Indiana.

March 6, 1997.

Richard D. Gilroy, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Arthur T. Perry, Deputy Attorney General, Indianapolis, for Appellee.

SULLIVAN, Justice.

We review and affirm the defendant's convictions and sentences for Murder[1], Robbery (class A felony)[2] and Carrying a Handgun Without a License.[3]

*Background*

On May 13, 1993, employees of the Black Eyed Pea restaurant on North Michigan Road, Indianapolis, reported to work around 7:50 a.m. They rang the back doorbell of the restaurant. Although the lights inside the restaurant were on and general manager Laura Botts's vehicle was in the parking lot, no one answered the doorbell. The employees were concerned about Botts so one of them went to a nearby restaurant and called 911.

Botts's body was found in the restaurant office. An autopsy revealed that Botts sustained a gunshot wound to the back of the head that penetrated her brain as well as a gunshot wound to the left chest area that penetrated her heart. Approximately $2,400 was missing from the restaurant safe.

Defendant had been hired to work at the Black Eyed Pea by Botts on February 9, 1993. He was terminated a few months later, but after a discussion with the manager, he was rehired. Defendant was scheduled to return to work on May 9, 1993, but never showed up. While the police officers were investigating the scene of the murder, defendant's step-mother approached the crime area and told police that defendant had come to the restaurant that morning to pick up his paycheck.

Defendant was arrested on May 17th, 1993. At trial, a jury found defendant guilty of Murder[4], Felony Murder[5], Robbery (class A felony)[6] and Carrying a Handgun Without a License.[7] The trial court merged the murder and felony murder convictions and sentenced defendant to sixty years for Murder, fifty years for Robbery and one year for Carrying a Handgun Without a License. The trial court ordered the sentences for Murder and Robbery to be served consecutively and the sentence for Carrying a Handgun Without a License to be served concurrently with the murder and robbery convictions.

I

■ Defendant first contends that the trial court's entry of consecutive sentences for both Murder and Robbery as a class A felony violated his rights not to be subjected to double jeopardy.[8]

Defendant cites *King v. State*, 517 N.E.2d 383 (Ind.1988), *overruled on other grounds by Simmons v. State*, 642 N.E.2d 511, 513 (Ind.1994), to support his contention that the trial court wrongly entered a sentence for both Robbery as a class A felony and Murder. *See also Moore v. State*, 652 N.E.2d 53, 60 (Ind.1995) ("A defendant may not be convicted and sentenced for both Murder and Robbery (Class A) where the act that is the basis for elevating Robbery to a Class A felony is the same act upon which the murder conviction is based."); *Mitchell v. State*, 541 N.E.2d 265, 271 (Ind.1989).

Defendant's reliance on *King* is misplaced because the facts in that case are distinguishable from the case here. In *King*, the defendant shot the victim only once, therefore making it clear that the force necessary to elevate the robbery conviction to a class A felony was the same as the force necessary to kill the victim. Here, however, the record reveals that defendant shot Botts twice. In doing so, he had to unload the spent car-

---

1. Ind.Code § 35–42–1–1 (1993).

2. Ind.Code § 35–42–5–1 (1993).

3. Ind.Code § 35–47–2–1 (1993).

4. Ind.Code § 35–42–1–1.

5. Ind.Code § 35–42–1–1 (1993).

6. Ind.Code § 35–42–5–1. Robbery constitutes a class A felony if the robbery results in serious bodily injury to the victim. Ind.Code § 35–42–5–1.

7. Ind.Code § 35–47–2–1.

8. U.S. Const. amend. V; Ind. Const art. I, § 14.

tridge case and reload to fire the second round with the single shot .22 caliber gun he used to shoot her. The trial court found that the first gunshot was the basis for the serious bodily injury inflicted during the course of the robbery and that the second gunshot was the basis for the murder and the record supports this finding. We affirm defendant's convictions and sentences for Murder and Robbery (Class A).

## II

 Defendant argues that the trial court's imposition of the maximum sentences for both Murder and Robbery is manifestly unreasonable and should be corrected on appeal by this court. He also argues that the trial court did not adequately identify its reasons for the enhanced sentences.

The Indiana Constitution authorizes this court to review and revise sentences. Ind. Const. art. VII, § 4. Sentencing is within the discretion of the trial court and our court will not revise a sentence unless it is manifestly unreasonable. Indiana Appellate Rule 17(B). The trial court must include within the record a statement of its reasons for selecting the sentence it imposes if the court finds aggravating or mitigating circumstances. Ind.Code § 35–38–1–3 (1993); *Harris v. State*, 659 N.E.2d 522, 527–28 (Ind. 1995).

The record shows that the trial court made the following observations at defendant's sentencing hearing:

> The Court has considered all the aggravating circumstances that have been presented, and the mitigating circumstances that have been presented.... The Court does find that there are aggravating circumstances ... because of the prior felony which did involve an armed robbery which, was similar in circumstance, even though

there was no death that occurred. The Court also finds aggravating circumstances by reason of the fact that Defendant had to reload a single shot gun before the murder was, in fact, committed. The Court also finds the fact that there are mitigating circumstances by reason of the fact of the Defendant's youthful age. Secondly that he has not had a good family background, and that he does not have a lengthy criminal history. However, the Court is of the opinion that the aggravating circumstances outweigh the mitigating circumstances, and would be sentencing the Defendant as to Count One, a period of 60 years; as to Count Three, a period of 50 years; as to Count Four, a period of 1 year. Count Four will run concurrently with Count Three, and Count Three will run consecutively to Count One.

(R. 1809–10).

Our review of the record satisfies us both that the sentence is not manifestly unreasonable and that the trial court sufficiently identified for the record significant mitigating and aggravating circumstances. We further conclude that the two aggravating circumstances cited by the trial court are sufficient to justify the imposition of the enhanced sentence; *see Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind.1993) (enhanced sentence may be imposed where prior criminal activity is an aggravating factor), and that the sentence is not manifestly unreasonable.

## III

 Defendant contends that his conviction should be reversed because the prosecution failed to disclose certain information favorable to him, namely that one person who gave the police information received a reward.[9]

**9.** *Defendant also claims in his brief that he learned after his first trial, which resulted in a mistrial, that the State and the mother of a state's witness engaged in a secret agreement whereby the State would drop possession of cocaine charges against the mother in exchange for her encouraging her son to testify. While the State acknowledges that charges against the witness's mother were dropped, it denies any such agreement existed prior to the first trial. The State also asserts that even if an agreement exist-*

*ed, it would have had no duty to disclose such an agreement under cases like McCord v. State, 622 N.E.2d 504, 509 (Ind.1993) (State must disclose agreements made with any witness for the state which may influence that witness's testimony) because mother was not a witness for the state. However, the fact that mother did not testify in no way reduces the State's obligation under cases like Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Braswell v. State, 550 N.E.2d 1280, 1284 (Ind.1990) (State*

The police were provided with certain information about defendant from an unnamed informant. The information included the defendant's whereabouts shortly before his arrest and names of certain members of his family. The police used this information to effectuate the arrest of defendant and the informant received a reward for providing this information.

"[S]uppression of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215. Even where no specific request was made by a defendant, suppression of material evidence by the prosecutor may violate a defendant's due process rights. *United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). *See also Braswell*, 550 N.E.2d 1280, 1284 (citing both *Brady* and *Agurs* principles).[10]

■ Materiality of the evidence entails showing that "there is a reasonable probability that in the event of disclosure the result of the proceeding would have been different." *Bellmore v. State*, 602 N.E.2d 111, 119 (Ind. 1992) (citing *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). *See also Johnson v. State*, 584 N.E.2d 1092, 1104 (Ind.1992) (prosecution's failure to disclose evidence was not reversible error because different result would not have occurred).

Here, we cannot say that there is a reasonable chance that the outcome of the proceeding would have been different had evidence that an informant received a reward been disclosed. As noted, the information that the informant provided to the police was hardly

incriminating. The informant gave police information regarding only the whereabouts of the defendant and names of certain persons in the defendant's family, information which the police used to effectuate the arrest of defendant. Because this information was not important at all in determining defendant's guilt or punishment, we cannot say that there is a reasonable chance that the outcome of the proceeding would have been different had the fact that this informant received an award been disclosed. We conclude that this evidence was not material and therefore the state did not have a duty under *Brady* to disclose it.

■ Defendant also argues that the prosecutor's misconduct in this case warranted a mistrial. A mistrial may be warranted if the prosecutor violates norms of professional conduct and places the defendant in a position of grave peril. *Coleman v. State*, 558 N.E.2d 1059, 1063 (Ind.1990). Gravity of peril is measured by its likely effect on the jury and a trial court's decision to grant or deny a mistrial is afforded great deference on appeal, *Schlomer v. State*, 580 N.E.2d 950, 955 (Ind.1991).

The trial court acknowledged displeasure with the State's conduct: "[T]he whole part of the State has been that they have constantly withheld information from the defendant, and that's not the way we play these games.... I'm very distressed from that fact that this has gone on ..." The trial court concluded, however, that this did not result in such grave peril to the defendant as to warrant a mistrial. Given the foregoing analysis under *Brady*, we do not disagree with the trial court that the State's conduct

has duty to disclose material evidence favorable to accused). And certainly *McCord* ought apply with equal force whether one is testifying in his or her own self-interest or that of his or her mother. In any event, defendant limits his failure to disclose argument to the informant's reward, so we address only this claim. Additionally, because defendant was made aware before the second trial commenced that charges against mother were dropped, we cannot say that failure to disclose any agreement before the first trial would have been reversible error here.

**10.** Defendant does not argue that the State should have disclosed information under the *Brady et. al.* line of cases. Instead, defendant argues that under cases like *McCord*, 622 N.E.2d 504, the State must disclose certain agreements. The State responds because there is no agreement between informant and the State, it had no duty to disclose. However, as we discussed in footnote 9, *infra*, a duty may still exist under *Brady*. Therefore, we analyze this issue under *Brady* principles.

did not place defendant in a position of grave peril.

## IV

Lastly, defendant claims that the trial court wrongly admitted certain evidence, including several allegedly inflammatory photographs and certain testimony by the husband of the victim.

Defendant claims that ten of the State's exhibits should not have been admitted because they were too prejudicial. Seven of these exhibits were photographs of the victim at the murder scene. The other three were photographs of the victim's injuries that were taken on the autopsy table before the autopsy was performed.

A trial court must weigh the probative value of evidence against its potential prejudicial effect, *Kimberlin v. De Long*, 637 N.E.2d 121, 129 (Ind.1994), *cert. denied* — U.S. —, 116 S.Ct. 98, 133 L.Ed.2d 53 (1995), and admission or exclusion of evidence is within the discretion of the trial court and will not be disturbed on review unless there was an abuse of discretion on the part of the trial court, *Barnes v. State*, 634 N.E.2d 46, 48 (Ind.1994). Photographs depicting matters which a witness describes in testimony are generally admissible. *Burris v. State*, 642 N.E.2d 961, 965 (Ind.1994), *cert. denied* — U.S. —, 116 S.Ct. 319, 133 L.Ed.2d 221 (1995). Also, generally, photographs depicting the crime scene and victim's body are admissible as long as they are relevant and competent aids to the jury. *Woods v. State*, 547 N.E.2d 772, 790 (Ind. 1989), *reh'g granted on other grounds*, 557 N.E.2d 1325 (1990). "Photographs of a victim's corpse in a homicide case are relevant not only to prove his or her identity, but serve as an aid to understanding the pathologist's findings on the cause of death. *Brown v. State* (1987), Ind., 503 N.E.2d 405. Photographs showing the victim in his or her natural state following death are relevant and admissible. *Loy v. State* (1982), Ind., 436 N.E.2d 1125." *Hughes v. State*, 546 N.E.2d 1203, 1211 (Ind.1989).

Here, we do not think the trial court abused its discretion in admitting the photographs of the victim at the murder scene. First, with respect to three of the exhibits, defendant did not object to the admission of these photographs. Failure to object at trial to the admission of evidence results in waiver of that issue on appeal. *Harrison v. State*, 644 N.E.2d 1243, 1256 (Ind.1995). Therefore, defendant has waived the right to contest admission of this evidence. Second, the rest of the photographs were admitted to help depict the nature of the crime and the cause of death of the victim. They were all admitted during the direct examination of persons testifying as to what they witnessed at the crime scene, and therefore assisted in describing the testimony of different witnesses.[11] None of them are any more gruesome than one would expect to find in a murder case. We find no basis for disagreeing with the trial court's conclusion that these photographs were not more prejudicial than probative and reject defendant's argument that the trial court improperly admitted the photographs at issue here.

Defendant also argues that the trial court wrongly permitted the victim's husband to testify about how he met his wife and how many children they had together, and wrongly allowed the prosecution to introduce into evidence a photograph of the victim before the murder.

With respect to the photograph of the victim before the murder and the testimony about how the victim and her husband met, the defendant has waived these issues because he failed to object during the trial.[12] *Harrison*, 644 N.E.2d at 1256.

---

11. James Meyer, employed by the Indianapolis–Marion County Forensic Services Agency, testified as to what he witnessed at the crime scene when four of these exhibits were admitted. The other exhibit was introduced during the testimony of Officer Ted Cassidy, who testified about what he saw at the crime scene. The pre-autopsy photographs, which helped to describe the actual injuries that lead to the victim's death, were introduced during the testimony of Timothy Murphy, employed by the Indianapolis–Marion County Forensic Lab.

12. In fact, with respect to the photograph, defendant specifically stated there was no objection.

Defendant, however, is correct in his assertion that the trial court should not have admitted into evidence testimony regarding how many children the victim and her husband had. This testimony had no real relevance to the issues in this case. "[G]enerally, such testimony [regarding number of children victim had] is irrelevant, prejudicial, and is not a proper part of the state's case." *Kelley v. State,* 470 N.E.2d 1322, 1325 (Ind.1984). However, this will result in reversible error only if it can be shown that the testimony substantially influenced the jury's verdict. *Id.* In light of the overwhelming evidence showing that defendant committed the murder here, we cannot say that the testimony of the victim's husband as to how many children they had substantially contributed to the verdict. Therefore, we conclude that this error was harmless and does not warrant reversal. *See Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995) (error in admission of evidence must affect substantial rights of defendant to result in reversible error).

*Conclusion*

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SELBY and BOEHM, JJ., concur.