**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 27 2014, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN PINNOW**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHNNY D. WAYT, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 36A05-1307-PC-338 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE JACKSON CIRCUIT COURT
The Honorable William E. Vance, Judge
Cause No. 36C01-0705-PC-1

**February 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On October 10, 2003, Appellant-Petitioner Johnny Wayt was charged with murder and Class A felony robbery. During Wayt's first trial, the trial court granted Wayt's motion for judgment on the evidence regarding the robbery charge. The trial ended in a hung jury with regard to the murder charge. On September 12, 2005, following a subsequent trial, Wayt was convicted of murder. Wayt's murder conviction was affirmed on direct appeal.

Wayt subsequently sought post-conviction relief. The post-conviction court denied Wayt's request for relief following an evidentiary hearing. On appeal, Wayt contends that the post-conviction court erroneously determined that the State did not knowingly present perjured testimony. Wayt also contends that the post-conviction court erroneously adopted the State's proposed findings and conclusions thereon in whole, and in determining that the State did not withhold evidence that was favorable to Wayt prior to trial. In addition, Wayt contends that the post-conviction court erroneously determined that he did not receive ineffective assistance from his trial counsel. Upon review, we affirm the judgment of the post-conviction court.

**FACTS AND PROCEDURAL HISTORY**

Our opinion in Wayt's prior direct appeal, which was handed down on October 17, 2006, instructs us as to the underlying facts and procedural history leading to this post-conviction appeal:

> On February 27, 1997, Rhonda Self drove to Ronald Bruner's residence in Vallonia. The two sat at the kitchen table while Bruner weighed a quantity of methamphetamine and placed the drug in some baggies. At some point, Jim Hauer and John McDonald arrived at the residence, where they smoked some

2

of the methamphetamine. Hauer purchased a baggie of the drug from Bruner and the two of them left approximately twenty-five minutes later.

Later that evening, Bruner attended a gathering at Shannon Weber's residence. Weber was a methamphetamine dealer who had several individuals sell drugs for [her]. At some point, Wayt, who was also at the party, told Leonard Proffit that he wanted to rob someone and that he needed [Proffit's] help. Proffit's nephew, Brad, apparently overheard this conversation. Wayt informed several others that there would be drugs and money at Bruner's house. As a result, Proffit, Wayt and Weber drove to Bruner's residence, where they intended to buy some drugs from Bruner or to steal methamphetamine if he was not at home. Proffit had a key to Bruner's house because he had been doing some work for him. Wayt and Proffit entered Bruner's house, emerged a short time later, and Wayt remarked that "it wasn't supposed to happen that way" and that "things just got all messed up." Tr. p. 263-64, 278. They returned to Proffit's residence, where Kenny Beavers saw Proffit stuff some blood stained clothes into a brown paper bag. Proffit then burned the clothes and Wayt remarked to Beavers: "I know you know what happened. Keep your mouth shut. I didn't want to do it but I had to do what I had to do." Id. at 453.

On February 28, George Lebline went to Bruner's residence to complete some work on the outside of the house. At some point, Lebline's brother-in-law, Don Kirts, arrived at the residence. He entered Bruner's residence using a key that Bruner had given him. Kirts had also done some work for Bruner and they had been involved in the drug dealing business together. Once inside, Kirts discovered Bruner's body lying on the floor in a pool of blood, wrapped in a blanket. Kirts checked for a pulse but there was none. Lebline also entered the residence and, upon seeing Bruner's body, contacted the police.

Dr. James Whitler performed an autopsy on Bruner and discovered numerous stab wounds on the body. Dr. Whitler determined that Bruner's death was a homicide and that he died as a result of acute blood loss that was caused by multiple stab wounds to his back, chest, and neck. The police subsequently found shoe prints on Bruner's jeans that were found to match the soles of Wayt's boots.

On October 10, 2003, Wayt was charged with murder and robbery. Following his arrest, Wayt was placed in a cell with Lee Riley and told Riley that "they know [I am] guilty" and "they know [I] did it." Tr. p. 355, 359. When the trial commenced on November 3, 2004, the trial court granted Wayt's motion for judgment on the evidence as to the robbery count. The trial ended in a hung jury on the murder count for reasons not apparent from the record. Wayt's retrial on the murder count was scheduled for August 22, 2005.

Prior to trial, Wayt filed a motion in limine to exclude evidence relating

3

to the robbery offense for which he had been acquitted. Although the motion was granted, the trial court specified that the State would be allowed to refer to the factual allegations leading to "the event that the Defendant is charged with." Tr. p. 33. At trial, Detective Rick Blaker testified that a robbery charge had been filed against Wayt. Wayt objected, stating that the testimony violated the order in limine. The trial court sustained the objection. Later in the trial, Proffit testified that Wayt tried "to recruit someone to help him rob somebody." Id. at 403. Wayt objected and moved for a mistrial. However, the trial court denied his request and determined that the motion in limine only referred to the charges filed against Wayt and that no violation had occurred. Id. at 407. Weber and Proffit were also permitted to testify about an alleged conversation between Wayt and Bruner that took place while the others were discussing the robbery. Apparently, Proffit told the others that Wayt had informed him that Bruner would not be home for about two hours and that would be the time to go to his house. And according to Proffit's testimony, it was Wayt's idea to commit the robbery and Wayt had solicited Proffit to assist him in the commission of the offense.

Following trial, Wayt was found guilty as charged and sentenced to a fifty-five year term of imprisonment.

*Wayt v. State*, 36A05-0511-CR-628 *2-4 (Ind. Ct. App. October 17, 2006) (first and second set of brackets added, all others in original), *trans. denied*. Wayt's convictions were subsequently affirmed on direct appeal. *Id*. at *11.

On May 4, 2007, Wayt filed a *pro se* petition for post-conviction relief ("PCR"). On February 22, 2010, Wayt, by counsel, filed an amended PCR petition. On October 4, 2012, Wayt filed a second amended PCR petition. The post-conviction court conducted an evidentiary hearing on Wayt's second amended PCR petition on April 5, 2013. During this hearing, Wayt, by counsel, presented argument in support of his PCR petition. On June 19, 2013, the post-conviction court issued an order denying Wayt's request for PCR.

## DISCUSSION AND DECISION

Post-conviction procedures do not afford the petitioner with a super-appeal. *Williams*

4

*v. State*, 706 N.E.2d 149, 153 (Ind. 1999). Instead, they create a narrow remedy for subsequent collateral challenges to convictions, challenges which must be based on grounds enumerated in the post-conviction rules. *Id.* A petitioner who has been denied post-conviction relief appeals from a negative judgment and as a result, faces a rigorous standard of review on appeal. *Dewitt v. State*, 755 N.E.2d 167, 169 (Ind. 2001); *Colliar v. State*, 715 N.E.2d 940, 942 (Ind. Ct. App. 1999), *trans. denied*.

Post-conviction proceedings are civil in nature. *Stevens v. State*, 770 N.E.2d 739, 745 (Ind. 2002). Therefore, in order to prevail, a petitioner must establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens*, 770 N.E.2d at 745. When appealing from the denial of a PCR petition, a petitioner must convince this court that the evidence, taken as a whole, "leads unmistakably to a conclusion opposite that reached by the post-conviction court." *Stevens*, 770 N.E.2d at 745. "It is only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, that its decision will be disturbed as contrary to law." *Godby v. State*, 809 N.E.2d 480, 482 (Ind. Ct. App. 2004), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). We therefore accept the post-conviction court's findings of fact unless they are clearly erroneous but give no deference to its conclusions of law. *Id.*

### I. Whether the Post-Conviction Court Erred in Determining that Wayt Failed to Establish that the State Knowingly Presented Perjured Testimony

5

Wayt contends that the post-conviction court erroneously determined that he failed to establish that the State knowingly presented perjured testimony during his murder trial. Wayt claims that the State knew that Weber falsely testified during Wayt's murder trial that she had not entered into an agreement with the State for future favorable treatment in exchange for her testimony against Wayt. In raising this contention, Wayt challenges the post-conviction court's determination that he failed to prove the existence of any such agreement between Weber and the State prior to Weber testifying against Wayt. Wayt also challenges the post-conviction court's determination that he was not prejudiced by Weber's allegedly false testimony.

### A. Existence of Alleged Agreement Between Weber and the State

> When a defendant believes that the prosecutor has failed to disclose an agreement with a state witness, the burden is on defendant to establish the existence of such an agreement by a preponderance of the evidence. [*Stanley v. State*, 479 N.E.2d 1315, 1318-19 (Ind. 1985).] The mere allegation of an agreement does not create an agreement and is insufficient to warrant relief. Generally, in the absence of a written agreement, proof of an agreement may be established by affidavit or other testimony. [*See Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765 (1972); *McCord v. State*, 622 N.E.2d 504, 508-09 (Ind. 1993); *Lopez v. State*, 527 N.E.2d 1119, 1128 (Ind. 1988).]

*Wright v. State*, 690 N.E.2d 1098, 1113-14 (Ind. 1997). "An express agreement … does not exist if a witness testifies favorably in the hope of leniency, and the State neither confirms nor denies that hope to the witness." *Id*. at 1113. "Similarly, hopes and expectations of a state witness coupled with evidence that a prosecutor-accomplice/witness deal may have been consummated after the in-court testimony is insufficient to bring a case within the

6

*Newman*[1] rule." *Id.*

In the instant matter, Wayt argues that the post-conviction court erred in determining that the State did not knowingly present perjured testimony during his murder trial because the record demonstrates, by a preponderance of the evidence, that Weber had entered into an agreement for a sentence reduction prior to her testifying against Wayt. In challenging the post-conviction court's determination to the contrary, Wayt argues that the post-conviction court erroneously found that Russell Johnson was not a credible witness and that Weber's credibility was made suspect during Wayt's murder trial. Wayt also argues that the post-conviction court failed to make the reasonable inference that Weber lied during Wayt's murder trial from her invocation of her Fifth Amendment right against self-incrimination during the evidentiary hearing on Wayt's PCR petition.

### i. Johnson's Credibility

In challenging the post-conviction court's determination that he failed to prove the existence of an agreement between Weber and the State, Wayt argues that the post-conviction court erroneously found that Johnson's testimony was unreliable. Wayt claims that Johnson's testimony is both reliable and sufficient to prove, by a preponderance of the evidence, that the State had entered into an agreement with Weber for a sentence reduction in exchange for her testimony against Wayt. The State, for its part, claims that the evidence presented during the evidentiary hearing is sufficient to sustain the post-conviction court's

---

[1] *Newman v. State*, 263 Ind. 569, 334 N.E.2d 684 (1975) (providing that when a co-conspirator testifies against a defendant, any understanding or agreement as to leniency during future prosecution of the co-conspirator must be disclosed to the jury).

determination that Johnson's testimony was unreliable. Upon review, we must agree with the State.

Johnson testified that he believed there was "at least a verbal agreement [with Prosecutor Stephen Pierson], that he was going to do something substantial for [Weber] upon her truthful testimony." Ex. 8, p. 29. However, upon reviewing Johnson's testimony, the post-conviction court found as follows:

> Johnson's testimony is unreliable because his memory of the events in question is poor. Johnson could not remember critical facts about the case, about his representation of Weber, and about the terms of any agreement. Johnson does not recall whether or not he represented Weber at her sentencing hearing. (Pet. Ex. 8, p. 3, l. 16-20). He does not recall what sentence Weber received. (Pet. Ex. 8, p. 3, l. 23-24). Johnson does not remember whether or not the victim, Ronald Bruner, was shot or stabbed. (Pet. Ex. 8, p. 7, l. 8). He does not recall the deposition testimony given by Shannon Weber on September 9, 2004, at which he was present, or even that there was a deposition. (Pet. Ex. 8, p. 10, l. 17-24). He does not recall being present during Weber's testimony at Wayt's trial, but believes that he was not. (Pet. Ex. 8, p. 26, l. 7-8). He does not remember why he was not there. (Pet. Ex. 8, p. 26, l. 18-19).

Appellant's App. pp. 203-04. Our review reveals that the post-conviction court accurately described Johnson's deposition testimony.

In addition, Johnson's deposition testimony reveals that, by Johnson's own admission, he did not clearly remember the specifics relating to Weber's case. Johnson indicated that he believed that his conversations with Prosecutor Pierson regarding whether Weber would testify against Wayt began shortly after he became involved in Weber's case. He could not recall "exactly in the chronology of this case how that worked, but there were definitely conversations." Ex. 8, p. 6. Johnson's testimony also indicated a hope that Weber would

obtain relief in exchange for her testimony against Wayt. Johnson testified that he remembered discussions regarding a ten-year sentence, but, when pressed about the timing of these discussions, he admitted that he could not remember the specifics of whether this discussion occurred before Weber testified against Wayt. Johnson admitted that his memory "is not the greatest," but that he did not think that Weber and the State ever agreed to any exact terms with respect to an alleged agreement for leniency prior to Weber testifying against Wayt. Ex. 8, p. 25.

Our review of Johnson's deposition testimony clearly demonstrates that Johnson's memory relating to his representation of Weber and the alleged agreement between Weber and the State was poor, to say the least. As such, we conclude that the post-conviction court did not err in finding that Johnson's testimony was unreliable with regard to the existence of any possible agreement between Weber and the State.

### ii. Weber's Credibility

Wayt also argues that the post-conviction court erroneously concluded that Weber's credibility was shown to be highly suspect during trial. We cannot agree. The record shows that Weber was shown to be a convicted felon, a drug dealer and user, and a liar during Wayt's murder trial. Weber testified that she used cocaine and methamphetamine, that she was a methamphetamine dealer who obtained the drug from multiple sources, and that she had friends who would sell the methamphetamine for her in exchange for drugs. Weber also testified that she was a convicted felon and acknowledged that she had initially lied to both police and the grand jury about her knowledge of the events relating to Bruner's death. From

9

these facts, it was not unreasonable for the post-conviction court to conclude that the jury likely looked at Weber's testimony with suspicion.

### iii. Invocation of Fifth Amendment Right Against Self-Incrimination

Wayt also argues that the post-conviction court should have inferred that Weber lied during Wayt's murder trial in light of her invocation of her Fifth Amendment right against self-incrimination during the evidentiary hearing on Wayt's PCR petition. The State acknowledges that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them," *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976), but points out that the post-conviction court was not required to make any such inference. We agree with the State and accordingly conclude that the post-conviction court did not err in declining to make the adverse inference that Weber must have lied in her testimony during Wayt's trial merely because she invoked her Fifth Amendment right when called to testify during the evidentiary hearing.

### B. Prejudice

Wayt also argues that the post-conviction court erroneously concluded that he was not prejudiced by Weber's allegedly false testimony. Specifically, Wayt claims that a new trial is necessary because he was prejudiced by Weber's allegedly false testimony that while she hoped to receive favorable future treatment from the State, she did not have a deal that would guarantee her favorable treatment in exchange for her testimony against Wayt. With regard to allegedly false testimony, the United States Supreme Court has held that a new trial is

necessary where the individual demonstrates that he suffered prejudice, *i.e.*, there is a reasonable likelihood that, but for the false testimony, the result of the proceeding would have been different. *Giglio*, 405 U.S. at 154 (citing *Napue v. Illinois*, 360 U.S. 264, 271 (1959)).

In arguing that he was prejudiced by Weber's allegedly false testimony regarding her alleged potential agreement with the State, Wayt concedes that Weber's testimony relating to the planning of the robbery and the events that occurred after the robbery and murder was corroborated by other witnesses. Wayt claims, however, that the other witnesses' credibility was suspect and could only have been believed by the jury because it was corroborated by Weber's testimony. We disagree.

Our review of the record demonstrates that Weber's credibility was made suspect as she was shown to be not only a liar but also a drug user, a drug dealer, and a convicted felon. The credibility of the other witnesses who testified regarding the planning of the robbery and the events that occurred after the robbery and murder was no more suspect than Weber's testimony, and it is unreasonable to believe that the jury only believed this testimony because it was corroborated by Weber. Further, the State also presented unrelated testimony indicating that Wayt acknowledged his role in Bruner's murder and was in possession of Bruner's property after the robbery. As such, we cannot say that there is a reasonable probability that, but for Weber's allegedly false testimony, the result of the proceedings would have been different. *See id*.

## II. Whether the Post-Conviction Court Erred in Adopting the State's Proposed Findings and Conclusions Thereon in Whole

Wayt next contends that the post-conviction court erred by adopting the State's proposed findings and conclusions thereon in whole. With regard to the wholesale adoption of a party's proposed findings by the court, the Indiana Supreme Court has held as follows:

> It is not uncommon for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. The trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning. We recognize that the need to keep the docket moving is properly a high priority of our trial bench. For this reason, we do not prohibit the practice of adopting a party's proposed findings. But when this occurs, there is an inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court. This is particularly true when the issues in the case turn less on the credibility of witnesses than on the inferences to be drawn from the facts and the legal effect of essentially unchallenged testimony.

*Wrinkles v. State*, 749 N.E.2d 1179, 1188 (Ind. 2001) (quoting *Prowell v. State*, 741 N.E.2d 704, 708-09 (Ind. 2001)). Further, while post-conviction courts are not encouraged to adopt wholesale the findings and conclusions of either party, we will not find bias solely on that basis. *Pruitt v. State*, 903 N.E.2d 899, 940 (Ind. 2009). "The critical inquiry is whether the findings adopted by the court are clearly erroneous." *Id*. (internal quotation omitted).

Here, even though the post-conviction court adopted the State's proposed findings and conclusions thereon in whole, our thorough review of the record demonstrates that the post-conviction court's order is supported by the record. As we discussed above, the record supports the post-conviction court's determination that Wayt failed to prove the existence of the alleged agreement between Weber and the State by a preponderance of the evidence. As such, the post-conviction court's findings and conclusions thereon are not clearly erroneous,

12

and Wayt has shown no bias or prejudice in this respect.

### III.  Whether the Post-Conviction Court Erred in Determining that the State Did Not Withhold Evidence Favorable to Wayt Prior to Trial

Wayt also contends that the post-conviction court erred in determining that the State did not withhold favorable evidence from him prior to trial.  Specifically, Wayt claims that the State deliberately withheld evidence of an agreement with Weber for a sentence reduction in exchange for her testimony in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

> To prevail on a *Brady* claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the suppressed evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial. *Bunch v. State*, 964 N.E.2d 274, 297 (Ind. Ct. App. 2012), *trans. denied*. Evidence is "material" under *Brady* only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id*. And a "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id*.

*Shelby v. State*, 986 N.E.2d 345, 358 (Ind. Ct. App. 2013), *trans. denied*.  Again, with respect to an agreement for leniency or a benefit to the witness, we have held that a prosecutor has a duty to disclose a confirmed promise to a witness for leniency or personal benefit in exchange for testimony.  *Wright*, 690 N.E.2d at 1113.  However, "[a]n express agreement … does not exist if a witness testifies favorably in the hope of leniency, and the State neither confirms nor denies that hope to the witness."  *Id*.

Having concluded above that Wayt failed to prove that Weber and the State had entered into an agreement for a sentence reduction in exchange for Weber testifying against Wayt during Wayt's murder trial, we conclude that Wayt cannot prove that the State failed to disclose evidence of this alleged agreement prior to trial.  Furthermore, even if Wayt could

13

prove that the State failed to disclose evidence of the alleged agreement prior to trial, Wayt

failed to show that he was prejudiced by the State's alleged failure to disclose. Again, an

individual shows prejudice by demonstrating that there is a reasonable likelihood that, but for

the State's failure to disclose evidence, the result of the proceeding would have been

different. *See Giglio*, 405 U.S. at 154 (citing *Napue*, 360 U.S. at 271).

Again, in the instant matter, the record demonstrates that Weber's testimony was

corroborated by other witnesses regarding the planning of and the events that occurred after

the robbery. The State also presented unrelated testimony indicating that Wayt

acknowledged his role in Bruner's murder and was in possession of Bruner's property after

the robbery. In addition, Weber's credibility was made suspect during trial because it was

shown that she is a drug user, a drug dealer, a liar, and a convicted felon. Moreover, Wayt

has presented no evidence suggesting that Weber would have been any more or less credible

had the State disclosed the alleged agreement prior to Wayt's murder trial. As such, we

cannot say that there is a reasonable probability that the result of the proceedings would have

been different if the State had disclosed the alleged agreement prior to Wayt's trial. *See id.*

**IV. Whether the Post-Conviction Court Erred in Determining that Wayt
Did Not Receive Ineffective Assistance of Trial Counsel**

The right to effective counsel is rooted in the Sixth Amendment to the United States

Constitution. *Taylor v. State*, 840 N.E.2d 324, 331 (Ind. 2006). "'The Sixth Amendment

recognizes the right to the assistance of counsel because it envisions counsel's playing a role

that is critical to the ability of the adversarial system to produce just results.'" *Id.* (quoting

14

*Strickland v. Washington*, 466 U.S. 668, 685 (1984)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

A successful claim for ineffective assistance of counsel must satisfy two components. *Reed v. State*, 866 N.E.2d 767, 769 (Ind. 2007). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that counsel's representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Id.* We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or most effective way to represent a client, and therefore, under this prong, we will assume that counsel performed adequately and defer to counsel's strategic and tactical decisions. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.*

Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. *Reed*, 866 N.E.2d at 769. Again, a petitioner may show prejudice by demonstrating that there is "a reasonable probability (*i.e.* a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* A petitioner's failure to satisfy either prong will cause the ineffective assistance of counsel claim to fail. *See Williams*, 706 N.E.2d at 154.

15

Stated differently, "[a]lthough the two parts of the *Strickland* test are separate inquires, a claim may be disposed of on either prong." *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (citing *Williams*, 706 N.E.2d at 154).

Wayt challenges the post-conviction court's determination that he did not suffer ineffective assistance of trial counsel. With regard to the first prong, Wayt claims that his trial counsel, Gregory Inman, was ineffective for failing to illicit testimony from Weber regarding the alleged agreement between Weber and the State. In raising this challenge, Wayt acknowledges that Inman filed a pre-trial discovery request for information relating to any agreements entered into between Weber and the State relating to favorable treatment in exchange for Weber's testimony against Wayt. The State responded to Inman's discovery requests but did not disclose any such agreement.

Despite the lack of disclosure of any such agreement, Inman questioned Weber about her hope that she would receive favorable treatment in exchange for her testimony and asked Weber if she had made a deal with the State for favorable treatment in exchange for her testimony. Inman also attempted to tarnish Weber's credibility by questioning her about the fact that she lied before the grand jury despite being granted immunity for her grand jury testimony.

During cross-examination, Weber denied that she had entered into any agreement with the State but admitted that she hoped to receive future favorable treatment from the State. She also admitted that she lied to the grand jury when she stated that she did not know anything about Bruner's murder. Inman again referred to Weber's acknowledgement that she

16

lied before the grand jury in his closing argument.  Wayt has failed to show how Inman's actions in this regard fell below an objective standard of reasonableness.

Further, with regard to the second prong, Wayt claims that he demonstrated prejudice. We cannot agree.  Again, the record demonstrates that Weber's testimony was corroborated by other witnesses regarding the planning of and the events that occurred after the robbery. The State also presented unrelated testimony indicating that Wayt acknowledged his role in Bruner's murder and was in possession of Bruner's property after the robbery.  In addition, Weber's credibility was made suspect during trial because it was shown that she is a drug user, a drug dealer, a liar, and a convicted felon.  As we stated above, in light of the fact that other witnesses corroborated Weber's testimony, the fact that the State presented unrelated evidence indicating Wayt's guilt, and the fact that Weber's credibility was made suspect during trial, we cannot say that there is a reasonable probability that, but for Inman's alleged errors, the result of the proceedings would have been different.  *See Reed*, 866 N.E.2d at 769.

## CONCLUSION

In sum, we conclude that the post-conviction court did not err in determining that Wayt failed to prove that the State knowingly presented perjury.  We also conclude that the post-conviction court did not err in adopting the State's proposed findings and conclusions thereon in whole or in determining that Wayt failed to prove that the State withheld valuable evidence prior to Wayt's trial.  In addition, we conclude that the post-conviction court did not err in determining that Wayt failed to establish that he suffered ineffective assistance from his trial counsel.  Accordingly, we affirm the judgment of the post-conviction court.

17

The judgment of the post-conviction court is affirmed.

MATHIAS, J., and PYLE, J., concur.